BUTTERFIELD *v.* BREZINA.

1. DEEDS—RECORDED PLAT—DEDICATION TO PUBLIC—HIGHWAYS AND STREETS.

The grantee, by merely receiving a deed conveying title to land according to a recorded plat, acquires an incorporeal hereditament entitling it to the use of streets and ways as shown in the plat, regardless of whether there has been a sufficient dedication to the public and acceptance thereof, since the platting and sale of lots does not constitute an irrevocable dedication of the streets to the public, but is binding as between the grantors and grantees.

2. EASEMENTS—SERVIENT ESTATE—BONA FIDE PURCHASER—NOTICE.

An easement is not binding on a subsequent bona fide purchaser of the servient estate without notice thereof, but is binding on a subsequent purchaser with notice of the easement.

3. SAME—SERVIENT ESTATE—NOTICE.

One who purchases land expressly subject to an easement, or with notice, actual or constructive, that it is burdened with existing easement, takes the land subject to the easements.

4. APPEAL AND ERROR—NONJURY CASE—FINDINGS OF FACT—CREDIBILITY OF EVIDENCE.

A trial judge in a nonjury case may give such weight to the testimony of a witness as in his opinion it is entitled to, and his findings of fact will not be reversed unless clearly erroneous (GCR 1963, 517.1).

5. EASEMENTS—APPEAL AND ERROR—PRESCRIPTIVE EASEMENT.

Finding of trial court in suit to determine and impress an easement across lake front lots for the benefit of back lot users, that defendants knew of plat containing the easement,

REFERENCES FOR POINTS IN HEADNOTES

[1] 23 Am Jur 2d, Dedication § 25.
[2, 3] 25 Am Jur 2d, Easements and Licenses §§ 26, 97, 98.
[4, 5] 5 Am Jur 2d, Appeal and Error § 839 *et seq.*

were on notice of the easement when they purchased the land, and that the easement was established by adverse use *held*, proper, where record contains ample support for the holding.

Appeal from Iosco; Holbrook (Donald E.), J., presiding, and Miller (Allan C.), J. Submitted Division 3 January 5, 1966, at Lansing. (Docket No. 641.) Decided June 14, 1966. Rehearing denied July 22, 1966.

Bill of complaint by Ronald W. Butterfield and others against Jerry L. Brezina and Beverly J. Brezina to impress an easement across defendants' land and to restrain defendants from interfering with the use and enjoyment of the easement. Judgment for plaintiffs. Defendants appeal. Affirmed.

*T. George Sternberg,* for plaintiffs.

*Jay M. Terbush, Jr.,* for defendants.

McGregor, J. Plaintiffs, as the different owners of several back lots in a tract bordering Lake Huron, brought a suit to determine and impress an easement across defendants' property for access to Lake Huron, and to restrain the defendants, their heirs and assigns from interfering with the right to use and enjoy said easement by plaintiffs and their successors-in-title.

The easement in question is a 10-foot-wide strip of land, the north line of which is the north line of North street, extended eastward to the lake, and is referred to in the pleadings as being adjacent to the north line of lot 23, block A* of supervisor's plat of Coast Guard Ville, a subdivision located in the township of Baldwin, Iosco county, Michigan.

---

* Although the pleadings and the testimony refer to block B, the plat map and the abstract diagram filed as an exhibit indicate that the lot in question is in block A.

Plaintiffs acquired their ownership at various times, all of them prior to the time when defendants first purchased their premises on a land contract dated July 16, 1960, the description of which, in part, was by metes and bounds and which included the 10-foot strip of land in question, without mention of an easement, although the supervisor's plat of Coast Guard Ville embracing this and adjoining lands had been on record since April 9, 1930. The evidence indicates that a Captain Robert Small owned all of the property concerned in this suit, together with other lands, of which he had a plat prepared in 1915, but it was not filed until it was filed as the aforesaid supervisor's plat of Coast Guard Ville, and which plat does indicate as an alley the 10-foot alleged easement in question. In 1916, Captain Small and wife deeded the land embracing the alleged easement and other land by metes and bounds with no mention of an easement, to Herbert Oakes, but reserved the fishing rights. A quitclaim deed from Robert Small and wife, recorded April 8, 1930, conveyed all parks, streets, and alleys of Coast Guard Ville plat to the township of Baldwin. Harriet Oakes, by warranty deed dated March 12, 1936, conveyed to Blanche Gotshall a parcel of land by metes and bounds description, which parcel includes the alleged easement area, but reserved only "all fishing rights reserved to Captain Robert Small, Sr., former owner". Blanche Gotshall had acquired an adjoining parcel in 1927 on which there was a cottage. She moved the cottage in 1929. There was testimony that the alleged easement area would have bisected the cottage, and other testimony that the cottage encroached about 3 feet on said alleged easement area. The abstract of title furnished her showed a sketch of the property with the location of the alleged easement area. Warranty deed from Blanche Gotshall to Stephen J. Mielock

and wife, recorded July 14, 1945, conveyed land by a metes and bounds description, included the alleged easement area, and reserved all commercial fishing rights, with no mention of an easement, which grantees conveyed the same land in the same manner by warranty deed, recorded May 26, 1956, to James P. Mielock and wife (no fishing rights were reserved), who moved the cottage to a location further back from the lake in the mid-fifties, and who subsequently sold the land embracing the alleged easement by a metes and bounds description together with a number of lots in the plat of Coast Guard Ville, on a land contract dated July 16, 1960, to the defendants herein, and a year later conveyed title by warranty deed in fulfillment thereof. Neither instrument mentioned the alleged easement area as such, but the abstract of title furnished the defendants with the deed has a sketch of the property showing the alleged easement area as a 10-foot extension of North street. About one year after defendants went into possession, in 1961, they built a fence across the disputed easement and thereby precipitated the instant action.

Defendants contended that plaintiffs were not landlocked, as there is a 30-foot easement to the lake less than 100 yards away from the disputed easement area, that the evidence did not establish the existence of facts required under the law to create or impress an easement by adverse possession or use, and that a warranty deed in the absence of fraud or mistake cannot be reformed to include an easement, citing *Barley* v. *Fisher* (1934), 267 Mich 450; *Wild* v. *Wild* (1934), 266 Mich 570; *Bain* v. *Fry* (1958), 352 Mich 299; *Missaukee Lakes Land Company* v. *Missaukee County Road Commission* (1952), 333 Mich 372; and other cases to support defendants' contention.

At the trial, Stephen Mielock, father of one of the plaintiffs and a predecessor in defendants' title, testified that he bought the property in 1945, and that he always recognized the alleged easement for the general public. Stephen Mielock further testified that he had the alleged easement area laid out by a surveyor, which testimony was in part disputed by the surveyor. James Mielock testified that he recognized the easement from the time his father bought the parcel embracing the easement in 1945. His wife testified that on three different occasions James Mielock discussed and advised the defendants of the easement. This was contradicted by defendant Jerry L. Brezina, who testified that the only discussion of the easement was had in a coffee shop in Tawas just before the deal was closed. A Mrs. Kutcher testified that she bought property in the plat and had used the alleged easement strip from June, 1946, and she further testified that the 10-foot strip was clearly defined, clear of obstructions, and that she rarely had to step out of the 10-foot strip. There was testimony of obstructing trees, brush, of necessary bulldozing of the land, and regarding the desolation thereof until about 1949. Observations were offered that there was no defined pathway, that the location of the alleged easement area was not the exact route used by the back lot users, and that the alleged easement area or alleyway was never fenced, along with other conflicting testimony. It is apparent that no mention of easement was made in the chain of title leading to defendants, unless one considers such easement is indicated where reference is made to the supervisor's plat, which showed a 10-foot strip designated as an alley, or the sketch in the abstract of title furnished in some transfers of title, which likewise showed the

disputed 10-foot strip as an extension of North street to the lake.

A visiting circuit judge who heard the case found for the plaintiffs that a private easement existed for the owners of the property in said plat. The trial court found that the defendants knew of the plat, that they were duly informed of the easement and its use when they purchased the land, that the easement was established by adverse use, and that the plaintiffs had sustained their required burden of proof.

Subsequently, the resident judge (not trial judge) denied defendants' motion for a new trial. In his opinion he emphasized the retention of fishing rights by the subdivider (Small) and commented that they "must include the right to get down to the water to fish".

A careful reading of the record and an examination of the exhibits contains clear, ample support of such trial court findings. We believe the following quotations correctly state the applicable law:

"By merely receiving a deed conveying title to land according to a recorded plat, the grantee acquires an incorporeal hereditament entitling it to the use of streets and ways as shown on the plat, regardless of whether there has been a sufficient dedication to the public and acceptance thereof, since the platting and sale of lots does not constitute an irrevocable dedication of the streets to the public, but is binding as between the grantors and grantees." 10 MLP Easements, § 16, p 111.

"Although it has been stated that subsequent grantees of a servient estate take subject to easements, it is perhaps more accurate to say that an easement is not binding on a subsequent bona fide purchaser of the servient estate without notice thereof, but is binding on a subsequent purchaser * * * with notice of the easement.

"One who purchases land expressly subject to an easement, or with notice, actual or constructive, that it is burdened with existing easements, takes the land subject to the easements." 10 MLP, Easements, § 17, p 112.

"The trial court saw and heard the witnesses, and as trier of the facts, was best able to judge the credibility of, and the weight to be accorded their testimony. We have repeatedly said that in cases tried without a jury the trial judge may give such weight to the testimony as in his opinion it is entitled to, and that in such cases we do not reverse unless the evidence clearly preponderates in the opposite direction." (Quoted in *Shaw* v. *Wiegartz* [1965], 1 Mich App 271, 278); *Mallory* v. *Pitcairn* (1943), 307 Mich 40, 47.

Other claims might be discussed but we have said enough to demonstrate that the judgment of the trial court was not against the great weight of the evidence, and that the trial court found the essential elements necessary to an easement by prescription.

"Findings of fact shall not be set aside unless clearly erroneous." GCR 1963, 517.1.

Other alleged errors have been considered, but in view of our holdings herein, it is unnecessary to pass on them.

Affirmed, with costs to the appellees.

T. G. KAVANAGH, P. J., and BURNS J., concurred.