### SHAW v MACOMB COMMUNITY COLLEGE

1. COLLEGES AND UNIVERSITIES—COMMUNITY COLLEGES—SCHOOLS AND SCHOOL DISTRICTS.

    A community college is not a school district.

2. SCHOOLS AND SCHOOL DISTRICTS—WORDS AND PHRASES—STATUTES.

    The phrase "school district" is not open to judicial determination, its meaning having been settled by the Legislature (MCLA 340.2).

3. SCHOOLS AND SCHOOL DISTRICTS—TEACHERS' TENURE ACT—COLLEGES AND UNIVERSITIES—COMMUNITY COLLEGES.

    Only public educational institutions operated by school districts were intended to be included within the teachers' tenure act; community colleges are not included within the purview of that legislation (MCLA 38.71 *et seq.).

Appeal from Court of Appeals, Division 2, Quinn, P. J., and Danhof and Targonski, JJ., amending Macomb, Frank E. Jeannette, J. Submitted November 9, 1972. (No. 3 November Term 1972, Docket No. 53,898.) Decided February 20, 1973.

37 Mich App 96 affirmed.

Complaint by Hazel C. Shaw against Board of Trustees of Macomb Community College for damages for breach of contract. Order entered striking

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 47 Am Jur, Schools § 12.
[3] 47 Am Jur, Schools § 129 *et seq.*
    Teachers' tenure statutes, 110 ALR 791, s. 113 ALR 1495, 127 ALR 1300.

all references in the complaint to the teachers' tenure act. Plaintiff appealed to the Court of Appeals by leave granted. Circuit court order amended to grant summary judgment to defendant and affirmed. Plaintiff appeals. Affirmed. Rehearing granted as to costs March 16, 1973, opinion amended to provide "no costs, a public question being involved."

*Campbell, Lee, Kurzman & Leitman,* for plaintiff.

*Johnston & Wendt,* for defendant.

T. E. BRENNAN, J. The parties have stipulated to an agreed statement of facts, as follows:

### AGREED STATEMENT OF FACTS

"The Plaintiff in this matter, Hazel C. Shaw, is a registered nurse licensed to practice the profession of nursing within the State of Michigan.

"In addition, the Plaintiff and Appellant held a valid Secondary Provisional Teaching Certificate continuously between October 15, 1964, and June 30, 1969. Said Secondary Provisional Teaching Certificate was valid for teaching all subjects in grades 7 and 8, as well as subjects in health and social science in grades 9 through 12.

"The Defendant herein, the Board of Trustees of the Community College District of the County of Macomb, is a duly constituted legal entity established by MCLA § 389.1 *et seq.,* and located in the County of Macomb, State of Michigan. Defendant's enrollment numbers approximately 18,000 students who are taught by approximately 308 full-time and 329 part-time instructors. Because of Defendant's vocational or occupational programs, which are taught by instructors whose qualifications are based on experience rather than education, 50% or more of the instructors or teachers in the employ of Defendant are not certificated or do not meet the qualifications contemplated in the Teachers' Tenure Act for such certification. Prior to 1967, all instructors, whether certificated or not, were employed by Defend-

ant under individual contracts which incorporated duly established and published Board of Trustees policy. Continuing contracts, affording a measure of job security admittedly less than that guaranteed by the Teachers' Tenure Act, were awarded all teachers who successfully completed a three (3) year probationary period. In 1967, Defendant recognized the Macomb Community College Faculty Senate as the instructional employees' sole and exclusive bargaining agent. Since 1967 all teachers, certificated and noncertificated, have been represented by this agent in their master contract negotiations. These master contracts have continued and enhanced the job security provided for in Board policy and have resulted in permanent status rights, promotion guarantees, grievance procedures and due process hearings on discharge or termination of employment.

"On January 19, 1965, a formal written probationary contract was entered into between the two parties in which the Plaintiff was employed by the Defendant as the 'Co-Ordinator of Nursing' at a salary of $4,428.00. Said contract commenced on February 1, 1965, and terminated on June 30, 1965. On or about April 1, 1965, Doctor Ray C. Doane, Director of the Division of Applied Science at Macomb County Community College, and the Defendant's agent, notified the Plaintiff that her employment had been beneficial to Macomb County Community College and indicated that the Plaintiff would be offered a new contract.

"On June 15, 1965, the Plaintiff and Defendant entered into a second probationary contract wherein the Plaintiff was employed as 'Co-Ordinator of Nursing' at an annual salary of $11,520.00. Said contract commenced on July 1, 1965, and terminated on June 30, 1966. During the period covered by the second contract, the Defendant did not provide the Plaintiff with any type of written statement as to whether her work had been satisfactory or not.

"On May 3, 1966, a third probationary contract was entered into between Plaintiff and Defendant when Plaintiff was again rehired as 'Co-Ordinator of Nursing.' The employment period of this contract commenced on July 1, 1966, and terminated on June 30, 1967. Said

contract provided that Plaintiff was to be paid
$11,923.00 in salary. The Teachers' Tenure Commission
was never notified as to the second or third probation-
ary contracts previously discussed.

"On April 30, 1967, the Plaintiff was notified, in
writing by Defendant's agent, that her contract would
not be renewed for the 1967–68 school year.

"In 1969 the Plaintiff initiated an action in the
Circuit Court for the County of Macomb charging the
Defendant with unlawful breach of contract and alleg-
ing substantial damages in the Complaint. Said Com-
plaint was answered by the Defendant on or about June
17, 1969. A Motion for Summary Judgment or in the
alternative to Strike Portions of the Complaint dealing
with the Teachers' Tenure Act was filed by the Defend-
ant in the Macomb County Circuit Court. Briefs were
submitted to the Honorable Frank E. Jeannette, Circuit
Judge for the County of Macomb and, on August 31,
1970, Judge Jeannette, in a formal written Opinion,
ruled that the Teachers' Tenure Act does not apply to
Macomb County Community College. On September 8,
1970, an Order was entered, signed by Judge Jeannette,
striking portions of the Plaintiff's Complaint which
treat the Teachers' Tenure Act.

"Both parties are in agreement that the sole issue
presented to this Court at this time is whether the
Teachers' Tenure Act applies to Community Colleges.

"Plaintiff filed a Delayed Application for Leave to
File an Interlocutory Appeal in the Court of Appeals on
or about October 17, 1970. On or about November 28,
1970, Defendant filed its Answer in Opposition of Plain-
tiff's Delayed Application. On December 28, 1970, the
Court of Appeals granted Plaintiff's Delayed Applica-
tion for Leave to File an Interlocutory Appeal. On or
about January 5, 1971, Plaintiff filed her Claim of
Appeal.

"On or about March 6, 1971, Plaintiff filed an Appli-
cation for Leave to Appeal, prior to decision by the
Court of Appeals, with this Court. That Application was
opposed by Defendant, and on May 11, 1971, this Court
denied the requested 'by-pass.'

"On November 22, 1971, Division Two of the Michi-

gan Court of Appeals modified and affirmed the trial
court's decision. The Court of Appeals' modification of
the Order was to grant to the Defendant a Summary
Judgment insofar as Plaintiff's claim was predicated
upon the Teachers' Tenure Act, 'because of the failure
to state a claim upon which relief (could) be granted.'

"Plaintiff's Delayed Application for Leave to Appeal
was filed in this Court on or about January 22, 1972.
An Answer and Brief in opposition was filed by Defend-
ant on or about February 9, 1972.

"This Court granted Plaintiff's Delayed Application
for Leave to Appeal in an Order dated March 2, 1972."

## THE ISSUE

This case presents an issue of statutory interpre-
tation: Whether 'the teachers' tenure act (MCLA
38.71 *et seq.;* MSA 15.1971 *et seq.)* applies to
community colleges.

The title of the teachers' tenure act is as follows:

"AN ACT relative to continuing tenure of office of
certificated teachers in public educational institutions;
to provide for probationary periods; to regulate dis-
charges or demotions; to provide for resignations and
leaves of absence; to create a state tenure commission
and to prescribe the powers and duties thereof; and to
prescribe penalties for violation of the provisions of this
act. As amended P.A. 1964, No. 2, § 1, Eff. Aug. 28."

The Act provides in part as follows:

"Sec. 1. The term 'teacher' as used in this act shall
include all certificated persons employed for a full
school year by any board of education or controlling
board of any public educational institution.

"Sec. 2. The term 'certificated' shall be as defined by
the state board of education.

"Sec. 3. The term 'controlling board' shall include all
boards having the care, management, or control over

public school districts and public educational institutions." MCLA 38.71–38.73; MSA 15.1971–15.1973.

"Sec. 1. All teachers during the first 2 school years of employment shall be deemed to be in a period of probation: Provided, That any teacher under contract at the time this act becomes effective who has previously rendered 2 or more years of service in the same school district shall be granted continuing tenure immediately upon reappointment by the controlling board: Any such controlling board by unanimous vote of its members, however, may refuse to appoint a teacher who has rendered 2 or more years service in the school district under its control. In the event the vote against reappointment of such teacher is not unanimous the controlling board shall deem such teacher as on continuing tenure with full right to hearing and appeal as provided in article 4 and article 6 of this act: Provided further, That the controlling board, after this act becomes effective, may place on continuing tenure any teacher who has previously rendered 2 or more years of service." MCLA 38.81; MSA 15.1981.

In other sections, the act provides for continuing tenure; rights with respect to discharge, demotion, or retirement; rights on hearing and appeal; and the creation of the state tenure commission.

Finally, the act provides:

"Sec. 1. This act shall apply to all school districts of the state. As amended P.A. 1964, No. 2, § 1, Eff. Aug. 28." MCLA 38.151; MSA 15.2051.

This last section, as originally enacted in 1937, provided as follows:

"As enacted in 1937, the section read: 'This act shall apply to such school districts of the state in which the qualified electors thereof, by a majority vote of the electors voting thereon, shall adopt the provisions of this act: Provided, That any time after the adoption of this act by any school district, it shall cease to be in effect in said district if at any election called for that

purpose, a majority of the electors in said district voting thereon, vote that the act shall no longer be in effect in said district. The question may be submitted at any general or special election in any such school district, and shall be governed by the laws of this state with respect to the submission of special questions in school districts.' " 1937 PA (Ex Sess) 4.

The defendant community college argues that this last quoted section of the act describes the parameters of the teachers' tenure act and limits its application to school districts. The defendant further argues that as a community college, it is not a school district, and points to various statutory enactments and historical precedents by which community colleges are to be distinguished from school districts. This point must be conceded to the defendant. The phrase "school district" is not open to judicial determination, its meaning having been settled by the Legislature:

"Sec. 2. Hereafter, except as otherwise provided in this act, each and every school district shall be organized and conducted as:
"1. A primary school district; or
"2. A school district of the fourth class; or
"3. A school district of the third class; or
"4. A school district of the second class; or
"5. A school district of the first class.
"P.A. 1955, No. 269, § 2, Eff. July 1." MCLA 340.2; MSA 15.3002.

Defendant's brief ably relates the statutory history of community colleges in Michigan:

"(1) The Uni-District Community College Concept.
"The genesis of the modern community college in the State of Michigan can be found in Section 1, Chapter 21, Part II of the school code of 1927, which provided, *inter alia:*

" 'The board of education in any school district of this state having a population of more than twenty-five thousand [25,000] people, as determined by the superintendent of public instruction, is hereby authorized and empowered to provide for the establishment and offering in such district of advanced courses of study for high school graduates, which courses shall not embrace more than two [2] years of collegiate work. Such courses collectively shall be known and designated as the junior collegiate department of the district school system. The board of education shall provide suitable instructors therefor and shall adopt regulations with reference to fees, admission and conduct of pupils taking such courses, and the issuance of diplomas upon the completion thereof.' 1948 [sic] CL 7570; MSA 15.610.

"In 1955 the legislature repealed the school code of 1927 and adopted the School Code of 1955. Section 791 thereof was derived from Section 1, Chapter 21, Part II of the school code of 1927 and provides:

" 'The board of any school district of a first, second or third class district, or the board of any special act district or other school district having a population of more than 10,000, is hereby authorized and empowered, after having secured the approval of the superintendent of public instruction, to provide for the establishing and offering in such district collegiate and noncollegiate courses of study which collegiate courses, except for school districts of the first class, shall not embrace more than 2 years of collegiate work. Such courses, collectively, exclusive of the regular kindergarten to 12 grades inclusive, shall be known and designated as the community college department of the district school system.' MCLA 340.791; MSA 15.3791

"Thus, as early as 1927 there existed in Michigan authority for school districts to establish a separate department within their district known either as a junior collegiate department or, as it now exists, as a community college department.

"(2) The Multi-District Community College Concept.

"In 1955 the legislature passed Act 188 which established the authority for the creation of a community college comprised of one or more contiguous counties.

1948 CL 390.871 et seq; MSA 15.615(11) et seq. The multi-district community college concept established thereunder is quite different from and absolutely independent of the several K-12 districts which may comprise such a community college in that its creation was ultimately approved by a majority vote of the electorate, 1948 CL 390.871; MSA 15.615(11); was governed by an elected Board of Trustees much the same as four year universities and colleges, 1948 CL 390.875; MSA 15.615(15); and was empowered to collect tuition, 1948 CL 390.874; MSA 15.615(14).

"In 1966 the legislature repealed Act 188 of the Public Acts of 1955 and adopted the Community College Act of 1966. MCLA 389.1 et seq; MSA 15.615(101) et seq. The multi-district concept was retained in that one or more counties, MCLA 389.11; MSA 15.615(111); two or more K-12 districts, MCLA 389.31; MSA 15.615(131); or one or more intermediate school districts, MCLA 389.51; MSA 15.615(151), may join together to establish a community college. However constituted, the Community College Act of 1966 defines a community college as follows:

" '(1) A community college means an educational institution providing, primarily for all persons above the twelfth grade age level and primarily for those within commuting distance, collegiate and noncollegiate level education including area vocational-technical education programs which may result in the granting of diplomas and certificates including those known as associate degrees but not including baccalaureate or higher degrees.

" '(2) An area vocational-education program means a program of organized systematic instruction designed to prepare the following individuals for useful employment in recognized occupations:

" '(a) Persons who have completed or left high school and who are available for fulltime study in preparation for entering the labor market.

" '(b) Persons who have already entered the labor market and who need training to achieve stability or advancement in employment.

" '(c) Persons enrolled in high school.

" '(3) When programs or courses are provided for persons enrolled in high school, the provisions of the programs or courses shall be requested for each of the individuals by the superintendent or his designated representative of the school district in which the person is enrolled.

" '(4) The word "area," in the phrase "area vocational-technical education program," refers to the geographical territory of the district, and whatever territory without the district as is designated as the service area of the district by the state board of education.

" 'A community college is eligible to receive such state aid and assistance as may be appropriated by the legislature for the aid and support of junior colleges or community colleges.' MCLA 389.105; MSA 15.615(1105).

"It is obvious that a community college established under the Community College Act of 1966 was intended by the legislature to perform a very special educational function. This function runs the gamut of educational instruction, from collegiate to vocational-technical course. Except for the administrator or director, such colleges may employ as teachers such personnel as may be necessary to effectuate its purpose. Section 124 of the Community College Act of 1966 provides:

" '(a) Contract with, appoint and employ a suitable person, not a member of the board, as administrator or director of the community college, who shall possess at least an earned bachelor's degree from a college acceptable to the state board of education and be the possessor of or be eligible for a teacher's certificate or have educational qualifications equivalent thereto in accordance with standards determined by the state board of education or have an earned doctor's degree from an accredited college or university, and who shall hold his office for a term fixed by the board, not to exceed 5 years, who shall perform such duties as the board may determine and who shall make reports in writing to the board of trustees and to the department of education annually or oftener if required in regard to all matters pertaining to the educational interest of the community college district; appoint in its discretion, a business manager responsible to the administrator or director of

the community college for the community college district and fix his term of office.

" '(b) Select and employ such administrative officers, teachers and employees and engage such services as shall be necessary to effectuate its purposes.' MCLA 389.124; MSA 15.615(1124).

"Section 123 of the Community College Act of 1966 provides, *inter alia:*

" 'The board of trustees may:

" '(b) Establish and collect tuition and fees for resident and non-resident students.' MCLA 389.123; MSA 15.615(1123).

"Thus, unlike K–12 school districts which must hire only certificated teachers, MCLA 340.570; MSA 15.3570, and which cannot charge tuition, Const 1908, Art 11, Section 9 and Const 1963, Art 8, Section 2, the community college organized under the Community College Act of 1966 need not hire certificated teachers and may collect tuition. These distinctions, it is felt, are important because they evidence an intention of the legislature to create an educational institution quite different than K–12 districts. Unlike the educational instruction of children, such community colleges are engaged in the educational instruction of adults, which necessitates an emphasis upon the vocational knowledge as opposed to the primary or 3-R's, so-called, knowledge. Because of this purpose, which it felt was well recognized, the legislature authorized community colleges to hire teachers whose qualifications were based upon experience rather than education and to charge tuition."

At the time the teachers' tenure act was adopted, there were no community colleges in Michigan. There were, however, junior colleges existing under the quoted section of the school code of 1927, and it was considered necessary for a teacher in a junior college to hold a certificate from the board of education. OAG, 1935–1936, No 1, p 34 (January 8, 1935).

The department of education maintained an administrative regulation establishing the criteria

for the Michigan junior college permanent certificate. 1954 AC, R 390.405. In 1955, the name of such junior colleges was changed to community college, and the 1964–1965 Annual Administrative Code Supplement contains at page 3259 a regulation of the State Board of Education, being R 390.661, which defined certificated teachers within the meaning of the teachers' tenure act to include teachers holding a junior (community college) permanent certificate.

In 1967, however, the State Board of Education adopted a new teacher certification code, being R 390.1101 *et seq.,* beginning at page 4234 of the 1967 Annual Administrative Code Supplement. In conjunction therewith, R 390.1199 rescinded the old teachers certification code, eliminating the provisions for Michigan junior college permanent certificates. Since the 1967 teachers certificate certification code did not contain any provision for the certification of teachers in community colleges, there has not been any administrative machinery since 1967 for the certification of community college teachers. 1967 AACS, R 390.1105(6), however, provides that previously issued certificates retain their original designation and validity. It would appear that the holder of a Michigan junior college permanent certificate, issued prior to 1967, still has a valid certificate. OAG, 1961–1962, No 3478, p 239 (January 24, 1962), however, concluded that the State Board of Education never had authority to certify junior college or community college instructors. That opinion was the apparent reason for the 1967 rescission of R 390.405, and the consistent administrative interpretation since that time.

While the language of the title of the teachers' tenure act referencing public educational institu-

tions would, at first blush, seem broad enough to include community colleges, and may indeed have included those junior colleges and successor community colleges, which were organized under the school codes of 1927 and 1955, it is apparent from a reading of the entire act that only public educational institutions operated by school districts were intended to be included within the teachers' tenure act. The entire legislative and administrative history of the teachers' tenure act and the statutes authorizing community colleges persuades us that community colleges are not included within the purview of that legislation.

Accordingly, the decision of the Court of Appeals is affirmed. No costs, a public question being involved.

T. M. KAVANAGH, C. J., and T. G. KAVANAGH, SWAINSON, and WILLIAMS, JJ., concurred with T. E. BRENNAN, J.

LEVIN and M. S. COLEMAN, JJ., did not sit in this case.