BEALS v WALKER

Docket No. 78-4454. Submitted February 13, 1980, at Lansing.—Decided June 16, 1980. Leave to appeal applied for.

Renold L. Beals, Jr., was injured when he fell from a roof of the Kingston Farm Service building, owned and operated by Richard J. Walker. He subsequently received medical treatment from several doctors including John F. Williamson, M.D. Mr. Beals and his wife Joyce E. Beals brought suit against Walker alleging negligence, and, in amended complaints, against Dr. Williamson alleging medical malpractice. The Tuscola Circuit Court, Martin E. Clements, J., entered a judgment on a jury verdict of no cause of action in favor of Walker and Williamson. Plaintiffs Bealses' motion for a new trial was denied. Plaintiffs appeal, alleging the trial court erred in 1) refusing to submit the case to the jury under the doctrine of comparative negligence, 2) permitting Dr. Williamson's counsel to introduce plaintiffs' original complaint and two amended complaints into evidence and to comment on the differences therein, 3) refusing

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 545.
  20 Am Jur 2d, Courts § 233.
[2] 5 Am Jur 2d, Appeal and Error § 810 *et seq.*
  Modern development of comparative negligence doctrine having applicability to negligence actions generally. 78 ALR3d 339.
[3, 5-7] 57 Am Jur 2d, Negligence §§ 5-7, 9.
[4] 57 Am Jur 2d, Negligence § 33.
[8, 9] 62 Am Jur 2d, Premises Liability § 121.
[9] 62 Am Jur 2d, Premises Liability § 69.
[10, 11, 12] 57 Am Jur 2d, Negligence § 273.
  Admissibility in evidence, on issue of negligence, of codes or standards of safety issued or sponsored by governmental body or by voluntary association. 58 ALR3d 148.
[11, 12] 29 Am Jur 2d, Evidence § 249.
[13, 14] 57 Am Jur 2d, Negligence § 79.
[15] 29 Am Jur 2d, Evidence § 687.
[16] 30 Am Jur 2d, Evidence § 693.
[17] 75 Am Jur 2d, Trial §§ 590, 592.
[18] 5 Am Jur 2d, Appeal and Error § 816.
[19] 5 Am Jur 2d, Appeal and Error § 886.

to give a requested instruction that any negligence on the part of Mr. Beals in contributing to his fall was not a defense to the medical malpractice action, and 4) refusing to give requested instructions listing the types of injury to Mr. Beals for which Dr. Williamson could be held liable.

Defendant Walker cross-appeals, alleging error in the denial of his motion for a directed verdict and the introduction of evidence by plaintiffs concerning state safety regulations. *Held:*

1. The trial judge erred in failing to grant defendant Walker's motion for a directed verdict, as plaintiffs did not make out a prima facie case of negligence. Thus, there is no need to remand for a new trial on the issue of comparative negligence.

2. Plaintiffs' evidence that defendant Walker failed to comply with certain administrative safety code provisions was irrelevant and should not have been introduced as evidence of negligence.

3. The allegations against Dr. Williamson in plaintiffs' second amended complaint and the lack thereof in the former pleading were relevant, and their admission into evidence was not error.

4. A refusal by the trial court to give plaintiffs' proffered instruction to the jury in its entirety was not reversible error, since the instruction submitted contained an improper charge to the jury and the instruction actually read fully and properly apprised the jury of the applicable law, along with the correct portion of the requested instruction.

5. A refusal to give requested instructions listing the type of injury to plaintiff Renold L. Beals, Jr., for which defendant Williamson could be held liable was harmless error since the jury never reached the question.

Reversed in part; affirmed in part.

M. J. KELLY, J., concurred with the majority opinion with respect to defendant Williamson, but dissented with respect to defendant Walker. He would affirm the trial court's denial of defendant Walker's motion for a directed verdict but would reverse for a new trial as to defendant Walker on the issue of comparative negligence.

## OPINION OF THE COURT

1. APPEAL — PRESERVATION OF ISSUE — COURTS — COMPARATIVE NEGLIGENCE.

A request during trial for the application of the doctrine of comparative negligence preserves the issue for appeal, requiring a reversal for a new trial, provided the case was pending on

appeal upon the adoption by the Supreme Court of the doctrine of comparative negligence.

2. APPEAL — COURTS — COMPARATIVE NEGLIGENCE — DIRECTED VERDICT — MOTIONS.

A refusal by a trial judge to apply the doctrine of comparative negligence, when requested, does not require a remand for a new trial on appeal where the opposite party was entitled to a directed verdict.

3. NEGLIGENCE — DIRECTED VERDICT — PROOFS.

A party must make out a prima facie case of negligence, which includes proofs of the four elements of negligence, in order to avoid a directed verdict for an adversary.

4. NEGLIGENCE — PROOFS — PARTIES — LEGAL DUTY — BREACH — PROXIMATE CAUSE — DAMAGES.

A prima facie case of negligence is made out where a party proves a legal duty was owed him by an adversary and that the duty was breached or violated by the adversary, proximately causing damages actually suffered.

5. TRIAL — DIRECTED VERDICT — QUESTION OF FACT — COURTS.

Directed verdicts are not permitted whenever a question of fact exists upon which reasonable persons may differ.

6. TRIAL — DIRECTED VERDICT — EVIDENCE — JURY VERDICT.

A directed verdict is improper where there is any competent and sufficient evidence to support a jury verdict for the nonmoving party.

7. MOTIONS AND ORDERS — DIRECTED VERDICT — TRIAL — EVIDENCE — COURTS.

A trial court is bound to view the evidence in a light most favorable to the nonmovant in considering a motion for a directed verdict.

8. NEGLIGENCE — MASTER AND SERVANT — INDEPENDENT CONTRACTOR — EMPLOYEE — BUSINESS INVITEE.

An independent contractor or an employee of an independent contractor doing repair work on the private premises of an owner is properly considered a business invitee.

9. NEGLIGENCE — PROPERTY OWNERS — BUSINESS INVITEES — DUTY TO WARN — LATENT DEFECTS — PATENT DEFECTS.

An owner-invitor has a duty to maintain his premises in a reasonably safe condition for a business invitee or to warn of dangerous conditions or latent or hidden defects on the prem-

ises which he knows or reasonably should know exist, but he has no duty to warn of conditions or defects which are obvious.

10. EVIDENCE — ADMINISTRATIVE RULES — SAFETY CODES — LEGISLATIVE AUTHORITY — DUTY — VIOLATION — NEGLIGENCE.

A violation of a duty imposed by administrative rules and regulations or safety codes and standards, where such code is adopted by an administrative agency pursuant to legislative authority, is evidence of negligence.

11. EVIDENCE — SAFETY CODES — LEGISLATIVE AUTHORITY — ADMISSIBILITY.

A safety code which has been properly promulgated must still meet all the general rules of evidence relating to competency, materiality, and relevance to be admissible in evidence.

12. EVIDENCE — ADMINISTRATIVE CODES — NONCOMPLIANCE — NEGLIGENCE — RELEVANCY.

Evidence that a party failed to comply with an administrative safety code should not be admitted where such noncompliance has no reasonable or logical connection with the negligence alleged.

13. EVIDENCE — INDUSTRY CUSTOMS — PROPER CONDUCT — RELEVANCE — KNOWLEDGE — NEGLIGENCE.

Evidence of an industry custom is generally admissible as bearing on what is proper conduct under given circumstances; but, to be relevant, it must be reasonably brought home to the actor's locality, and be so general or well known that the actor may be charged with knowledge or negligent ignorance thereof.

14. NEGLIGENCE — INDUSTRY CUSTOMS — STANDARDS OF CONDUCT — KNOWLEDGE — EVIDENCE.

A party cannot be held to a specific standard of conduct as indicated by an industry custom of which he has no knowledge and for which awareness cannot be reasonably charged.

15. EVIDENCE — PLEADINGS — AVERMENT OR ADMISSION — TRIAL — RELEVANCE — MATERIALITY.

An averment or admission in an adversary's final pleading is competent evidence and can be introduced at trial if relevant and material.

16. EVIDENCE — PLEADINGS — AMENDMENT — JUDICIAL ADMISSIONS — ADMISSIBILITY.

A pleading or allegation which is amended, withdrawn, or superseded ceases to be usable as a conclusive judicial admission but

is admissible in evidence in the case in which it is filed as an evidentiary admission.

17. Trial — Instructions to Jury — Improper Charge — Applicable Law — Courts.

A refusal by the trial court to give a party's proffered instruction to the jury in its entirety was not error where the instruction submitted contained an improper charge to the jury and the instruction actually given fully and properly apprised the jury of the applicable law, along with the correct portion of the requested instruction.

18. Trial — Instructions to Jury — Harmless Error.

A refusal to give requested instructions listing the types of injury to a plaintiff for which a defendant could be held liable was harmless error where the jury never reached the question.

Partial Concurrence and Partial Dissent by M. J. Kelly, J.

19. Negligence — Appeal — Review of Record.

*A review of the entire record is necessary to determine the propriety of a trial court's denial of a defendant's motion for a directed verdict when plaintiff's proofs, however slight, create at least a permissible inference of the defendant's negligence.*

*Cicinelli, Mossner, Majoros & Alexander* (by *Eugene D. Mossner* and *Kay F. Pearson*), for plaintiff.

*Isackson & Neering* (by *Frank M. Quinn*), for defendant Walker.

*Smith and Brooker* (by *Richard G. Smith* and *Thomas A. Connolly*), for defendant Williamson.

Before: J. H. Gillis, P.J., and Allen and M. J. Kelly, JJ.

Allen, J. On January 18, 1974, plaintiff Renold L. Beals, Jr. suffered personal injuries when he fell from a roof of the Kingston Farm Service building in Kingston, Michigan, owned and operated by

defendant Walker. As a result of this fall, plaintiff received medical treatment from several doctors, including Dr. Williamson. A complaint was filed, alleging defendant Walker's breach of various duties with respect to safety on the premises, proximately causing plaintiff's fall and resulting injuries. Amended complaints were filed, alleging medical malpractice by defendant Dr. Williamson in the treatment of plaintiff's injured foot. A trial was held on June 6, 1978, and ended with a jury verdict of no cause of action in favor of both defendants on June 17, 1978. Plaintiff's motion for a new trial was denied by the trial court on October 6, 1978. He appeals as of right.

Since plaintiff's claims[1] arose out of two distinct wrongs, albeit deriving from his fall from Walker's roof, and allege two distinct causes of action against the defendants, we consider separately the appeal and cross-appeal of the parties.

## I. CLAIMS BETWEEN PLAINTIFF AND DEFENDANT WALKER: PREMISES LIABILITY

At the time of his injury, plaintiff had been a millwright for about ten years and had been working for the same employer for about four years. All of his work as a millwright had involved grain elevators, silos and other farm structures. Plaintiff had worked at defendant's Kingston Farm Service elevator previously. Normally, plaintiff worked with his own tools and tools provided by his employer. The employer also provided scaffolding, where needed, and rope, safety harnesses and chains were standard equipment. The millwrights would generally decide what needed to be done on

---

[1] Plaintiff's wife, Joyce E. Beals, also claimed damages arising out of the parties' allegedly tortious behavior in the form of loss of her husband's services and consortium. However, since her claim is derivative, all references to plaintiff in this opinion are singular and refer only to Renold L. Beals.

the job and the method of doing it without supervision from their employer.

On January 17, 1974, Walker telephoned plaintiff's employer to arrange for repair of a broken "leg" on his grain elevator. Walker explained that he thought the problem was with the "reducer gear". The employer contacted plaintiff and another millwright, John Wilson, and told them to make the repairs the next day. Ordinarily, when millwrights were called in to make repairs on a grain elevator, they brought their own equipment and were not supervised or directed by the elevator operator, who would attempt to define the problem and would be billed for the job.

On the morning of January 18, 1974, plaintiff and Mr. Wilson picked up the needed parts in Saginaw and drove to defendant's place of business. The temperature was near freezing, and there was a hazy sky and a fine misty rain. When they arrived at Kingston Farm Service, Mr. Wilson went to the office to speak with defendant about the kind of repair needed. Defendant explained that he thought that the problem was with the reducer, which was in the headhouse at the top of the grain elevator.

At trial, neither plaintiff nor defendant recalled any discussion with Mr. Wilson concerning means of access to the headhouse. However, defendant's deposition testimony and written statement indicated that he told Mr. Wilson that there were two ways of getting to the headhouse, a man-lift and an outside ladder.

The man-lift was a manually operated one-man lift inside the grain elevator, which was the only inside access to the headhouse. Defendant testified that routine maintenance and repair in the headhouse area did not require more than one person

and that there had not been a similar breakdown in the grain elevator while he worked there.

After the initial contact with the millwrights, defendant gave no further instructions and left the premises to keep an appointment. Plaintiff and Mr. Wilson decided that the repair required two men and, since the lift only carried one, looked for a second means of access to the headhouse. Plaintiff initially looked for an inside ladder adjacent to the lift. He testified that such ladders existed in all other grain elevators that he had worked on. This elevator did not have one, and plaintiff asked one of defendant's employees how a second person could reach the headhouse. The employee pointed out an outside ladder leading from a lower roof to the headhouse and a portable ladder that could be used to get from the ground to the lower roof.

Mr. Wilson went up in the interior lift, and plaintiff decided to use the outside route. Plaintiff leaned the portable ladder against the building to reach the lower roof. He climbed the ladder and felt the roof for ice and wetness before climbing onto it and found none. He got on the roof and started toward the second ladder. The roof peaked a few feet before the ladder to the headhouse, and plaintiff did not feel the roof on the other side of the peak but testified that it looked like the rest of the roof. Without stopping, he stepped over the peak and slipped on a "glare of ice" and slid down the roof and over the edge, landing on railroad tracks below. During the climb, he had not used a safety line or belt or roof cleats.

Plaintiff struck the railroad tracks with his left elbow and face, causing a cut lip, broken tooth and broken glasses. He also felt pain in his right foot, later determined to be a comminuted fracture. The alleged mistreatment of the fracture by defendant

Dr. Williamson was the basis of the malpractice portion of the lawsuit.

At trial, plaintiff offered evidence establishing that defendant failed to comply with various state safety regulations relating to the use of guardrails and barriers on stairways and runways. Defense counsel objected to the admissibility of this evidence, claiming that it was irrelevant to the matter on trial. The objection was overruled. In addition, plaintiff introduced evidence tending to show that it was the custom and practice of the industry to provide ladders inside grain elevators. At the close of plaintiff's proofs, defendant Walker moved for a directed verdict on the basis that plaintiff failed to establish, as a matter of law, that defendant breached his duty to provide reasonably safe premises for the plaintiff. This motion was taken under advisement by the trial judge and subsequently denied. Defendant cross-appeals on the denial of his motion for directed verdict and the introduction of plaintiff's evidence concerning state safety regulations.

Defendant Walker's position at trial was that (1) he was not negligent, since he did not breach his duty of care to plaintiff, and (2) plaintiff was contributorially negligent and, therefore, barred from any recovery, even if defendant was negligent.

The issue of defendant's negligence and the plaintiff's contributory negligence was submitted to the jury with appropriate instructions. However, plaintiff objected to the instruction on contributory negligence, claiming that the case should be decided on the doctrine of comparative negligence. The trial judge rejected this claim, and the jury returned a verdict of no cause of action in favor of the defendant.

On appeal from this verdict and a subsequent denial of plaintiff's motion for a new trial, the plaintiff claims that the trial court erred in refusing to submit the case to the jury under the doctrine of comparative negligence. Both parties to this appeal acknowledge that this case is governed by the Michigan Supreme Court's decision in *Placek v City of Sterling Heights,* 405 Mich 638; 275 NW2d 511 (1979).

In *Placek,* the Supreme Court held that the doctrine of contributory negligence was henceforth replaced by the doctrine of comparative negligence. The decision was given limited retroactive effect to "any case presently pending on appeal in which application of the doctrine was requested at the trial court, and the issue preserved for appeal". *Placek, supra,* 667. Since, in the case at bar, plaintiff properly raised the issue and preserved it for appeal, we would, under normal circumstances, be required to reverse for a new trial. *Rivers v Ford Motor Co,* 90 Mich App 94, 97; 280 NW2d 875 (1979).

It is not clear from the jury verdict whether it concluded that defendant Walker was not negligent or that the plaintiff was contributorially negligent. Faced with this ambiguity, we would ordinarily reverse the judgment, since it is just as likely that the jury based its verdict on the finding that plaintiff was contributorially negligent, which conclusion would now be impermissible in light of *Placek.* However, since, for the reasons hereinafter set forth, we conclude that the trial judge erred in failing to grant defendant's motion for directed verdict on the issue of defendant's negligence, there is no need to remand for a new trial.

In order to avoid a directed verdict for the defendant, plaintiff must make out a prima facie

case of negligence, which includes proofs of the four elements of negligence:

"1) that the defendant owed a legal duty to the plaintiff;

"2) that the defendant breached or violated the legal duty it owed to the plaintiff;

"3) that the defendant's breach of duty was a proximate cause of the damages suffered by the plaintiff; and

"4) that the plaintiff suffered damages." *Crews v General Motors Corp,* 400 Mich 208, 224; 253 NW2d 617 (1977), (opinion by WILLIAMS, J.).

See also, *Roulo v Automobile Club of Michigan,* 386 Mich 324, 328; 192 NW2d 237 (1971), *Clark v Dalman,* 379 Mich 251, 260; 150 NW2d 755 (1967). The absence of proof on any one of these elements prevents plaintiff from submitting the case to the jury.

We are well aware that directed verdicts, particularly in negligence actions, are not permitted whenever a fact question exists, upon which reasonable persons may differ. *Caldwell v Fox,* 394 Mich 401, 407; 231 NW2d 46 (1975). Where there is any competent and sufficient evidence to support a jury verdict for the nonmoving party, a directed verdict is improper. *McKinch v Dixon,* 391 Mich 282; 215 NW2d 689 (1974), *Kujawski v Cohen,* 56 Mich App 533, 535; 224 NW2d 908 (1974), *lv den* 394 Mich 772 (1975). In considering the motion, the trial court is bound to view the evidence in a light most favorable to the nonmovant, *Beasley v Grand Trunk W R Co,* 90 Mich App 576, 583-584; 282 NW2d 401 (1979).

Bearing these points in mind, we proceed to consider whether plaintiff provided any evidence at trial on the element of defendant's purported breach of the legal duty he owed to plaintiff. In

this regard, we note that the parties do not dispute
the existence or extent of the legal duty owed by
defendant to the plaintiff. Whether as an indepen-
dent contractor or an employee of an independent
contractor doing repair work on the private prem-
ises of the owner, plaintiff is properly considered
as a business invitee of the defendant. *Perl v
Cohodas, Peterson, Paoli, Nast Co,* 295 Mich 325;
294 NW 697 (1940), *Boylen v Berkey & Gay Furni-
ture Co,* 260 Mich 211; 244 NW 451 (1932), *Keis-
wetter v Rubenstein,* 235 Mich 36; 209 NW 154; 48
ALR 1049 (1926), *Kucken v Hygrade Food Prod-
ucts,* 51 Mich App 471; 215 NW2d 772 (1974). As
the owner-invitor, defendant had a duty to main-
tain his premises in a reasonably safe condition for
the plaintiff or, in the alternative, to warn the
plaintiff of dangerous conditions or latent or hid-
den defects on the premises which defendant knew
or reasonably should have known existed. *Kroll v
Katz,* 374 Mich 364; 132 NW2d 27 (1965), *Dobbek v
Herman Gundlach, Inc,* 13 Mich App 549, 555; 164
NW2d 685 (1968), *Mills v A B Dick Co,* 26 Mich
App 164, 167; 182 NW2d 79 (1970), *Kucken, supra,*
474. Of course, defendant has no duty to warn
plaintiff of a condition or defect that is obvious.
*Kirner v General Motors Corp,* 41 Mich App 211,
213; 199 NW2d 827 (1972), Prosser, Law of Torts
(4th ed), § 61, p 394.

Plaintiff testified at trial that he specifically
tested the roof for ice when he first climbed up
there. Although he stated that no ice could be seen
on the far side of the roof, certainly he, more than
the defendant, was in a position to discover the
existence of the icy condition. If the roof appeared
safe to the plaintiff under the circumstances, it
must have so appeared to the defendant. Since
defendant was without actual knowledge of the

natural condition, and there was nothing in the appearance of the rooftop which indicated the possible or probable existence of the icy condition, defendant cannot be required to have made an inspection or warn of such a condition. *McCarthy v Hiers*, 81 Ga App 365; 59 SE2d 22 (1950). Thus, to the extent that the icy condition was obvious, due to the temperature, climate, and time of year, defendant cannot be held to have a duty to warn plaintiff of such a condition. Correlatively, to the extent that the icy condition was hidden from the plaintiff's observation, it must also have been hidden from the defendant. As such, and absent evidence that defendant actually knew of the icy condition of the roof, we conclude that defendant had no duty, as a matter of law, to warn plaintiff of the slippery condition of the roof.

Therefore, the issue here is concerned with the second element of negligence: whether plaintiff introduced sufficient evidence to establish that defendant breached the general legal duty to maintain his premises in a reasonably safe condition. Defendant contends that the two basic types of evidence offered by plaintiff at trial were insufficient, as a matter of law, to take the case to the jury on the question of negligence. We agree.

First, plaintiff introduced evidence of various safety regulations issued by the Michigan Department of Labor. These regulations require the use of guardrails and barriers "in all places of employment where there is danger of persons * * * falling * * * from stairways and runways". 1976 AACS R 408.10201. Defendant objected to the introduction of this evidence on the grounds that it was immaterial and irrelevant. Although the trial court overruled the objection, in its later

order denying plaintiff's motion for new trial the court questioned the propriety of its own ruling, stating:

"I question now whether such mention should even have been presented to the jury considering the area was a seldom used exterior roof of a warehouse."

Violations of a duty imposed by administrative rules and regulations are evidence of negligence. *Douglas v Edgewater Park Co,* 369 Mich 320, 328; 119 NW2d 567 (1963), *Zeni v Anderson,* 397 Mich 117, 142; 243 NW2d 270 (1976). The same rule applies to safety codes and standards, where such code is adopted by an administrative agency pursuant to legislative authority. *Cheney v Olender,* 303 Mich 129; 5 NW2d 692 (1942), 57 Am Jur 2d, Negligence, § 273, 30 Am Jur 2d, Evidence, § 1003, Anno: *Admissibility of safety codes or standards,* 58 ALR3d 148. Assuming that the safety code has been properly promulgated, 30 Am Jur 2d, Evidence, § 1003, fn 20, it is still necessary that the code meet all of the general rules of evidence relating to competency, materiality and relevance. See *Whinnen v 231 Corp,* 49 Mich App 371, 374; 212 NW2d 297 (1973), *Webster v WXYZ,* 59 Mich App 375, 383; 229 NW2d 460 (1975), *Warren v Michigan Gas Utilities Co,* 91 Mich App 231, 236; 283 NW2d 703 (1979).

In the case at bar, plaintiff's evidence that defendant failed to comply with the administrative safety code was clearly irrelevant and should not have been introduced as evidence of defendant's negligence. Review of the statutory scheme by which the safety code is authorized raises serious doubts as to whether defendant should be subject

to these administrative regulations in this case.[2] However, even if we were to conclude that defendant is subject to these regulations, they were clearly irrelevant, since they had no reasonable, logical connection with the negligence alleged.

One regulation read to the jury involves the use of certain safety devices on ladders ascending over 20 feet. This regulation has no application in this case, since the plaintiff fell from the rooftop before he was able to reach the outside ladder. Accordingly, any alleged inadequacy of the ladder did not, as a matter of law, contribute to his fall. 1970-71 AACS R 408.10355.

The other regulations submitted to the jury involve the use of guardrails and barriers,

"* * * in all places of employment where there is danger of persons, materials, or equipment falling through or into floor and wall holes or openings, or from stairways or runways." 1976 AACS R 408.10201.

Related regulations requiring barriers for "an open sided floor or platform" or for a "ramp" were

---

[2] Promulgation of the safety regulations is authorized by § 16 of the Michigan Occupational Safety & Health Act, 1974 PA 154; MCL 408.1001 *et seq.;* MSA 17.50(1) *et seq.* The act specifically applies to "all places of employment". Section 2(1). This phrase is defined in the statute as "a factory, plant, establishment, construction site, or other similar area, workplace or environment where an employee is permitted to work". Section 6(1). An "employee" is "a person permitted to work by an employer". Section 5(1). And an "employer" is defined as "an individual or organization * * * which employs 1 or more persons". Section 5(2). Although this legislation is to be liberally construed, Am Jur 2d, New Topic Service, Occupational Safety and Health Acts, § 28, we are inclined to hold that it does not apply where, as in this case, an employee of an independent contractor is injured while performing repairs on the business premises of the other contracting party, and where the injury occurs at an area of the premises not used in the ordinary business operation. See *Cochran v International Harvester Co,* 408 F Supp 598 (D Ky, 1975), Anno: *Who is "employer" for purposes of occupational safety and health act (29 USCS § 651 et seq.),* 27 ALR Fed 943.

also read to the jury. 1970-71 AACS R 408.10213, 1973 AACS R 408.10207.

It is obvious that the warehouse roof upon which plaintiff climbed was not a stairway, runway, ramp, platform or open-sided floor. *Cf. Wilhelm v The Detroit Edison Co,* 56 Mich App 116, 141-142; 224 NW2d 289 (1974). The Occupational Safety Standards Commission could have very easily included rooftops as another type of area in a "place of employment" where the danger of persons falling was sufficient to require the use of barriers or guardrails. MCL 408.1016; MSA 17.50(16). However, it did not do so. Further, in addition to the commonsense meaning of the words, reference to the administrative definitions of the terms floor, opening, platform, runway and stairway indicate that the requirement for the use of guardrails and barriers on warehouse rooftops is simply inapplicable. 1970-71 AACS R 408.10205-7. Accordingly, defendant had no obligation to comply with these regulations as they related to his warehouse roof. As such, his failure to comply with the safety code had no reasonable, logical connection with his duty to maintain his premises in a reasonably safe condition. Such evidence was irrelevant on the issue of whether defendant breached that duty, and, therefore, should not have been admitted.

The only other evidence offered by plaintiff at trial on defendant's alleged breach of duty was that defendant failed to conform to the industry custom of providing access ladders inside the grain elevator. Evidence of an industry custom is generally admissible as bearing on what is proper conduct under the circumstances. 2 Harper & James, Law of Torts, § 17.3, Prosser, Law of Torts (4th ed), § 33, p 166, 57 Am Jur 2d, Negligence, §§ 77-81, pp 428-432, *Fries v Merkley,* 8 Mich App 177; 154 NW2d 50 (1967). However,

"A custom to be relevant, must be reasonably brought home to the actor's locality, and must be so general, or so well known, that the actor may be charged with knowledge of it or with negligent ignorance." Prosser, *supra*, 168.

Michigan courts have followed this rule. *Fogarty v Michigan Central R Co*, 180 Mich 422, 432-433; 147 NW 507 (1914), *Hoyt v Jeffers*, 30 Mich 181, 192 (1874). In the case at bar, plaintiff's evidence did not indicate that the defendant knew of the alleged industry custom of installing interior ladders, nor did it establish that defendant had any reason to anticipate the need for two-man access to the headhouse. Absent proof that the defendant knew or reasonably should have known of the industry custom and the need for two-man access to the headhouse, evidence of the use of interior ladders in other grain elevators was irrelevant. This is because defendant should not be held to a specific standard of conduct, as indicated by an industry custom, of which he has no knowledge and for which awareness cannot be reasonably charged. Accordingly, this evidence should not have been considered by the trial judge in ruling on defendant's motion for directed verdict.

Other than the two types of proof discussed above, which we have concluded should not have been considered by the trial judge in ruling on the motion for directed verdict, plaintiff failed to offer any other evidence on the issue of defendant's breach of duty to provide reasonably safe premises.[3] As a result of plaintiff's lack of any proof in

[3] After the close of plaintiff's case in chief and defendant's motion for a directed verdict, testimony of the defendant was introduced into evidence which established that defendant and some of his employees may have used the ladder leading to the headhouse on prior occasions. Assuming that this testimony raised a jury question of defendant's negligence, nevertheless, as no such question appeared at the

this regard, he failed to make out a prima facie case of negligence against the defendant. Under these circumstances, the trial judge erred by refusing to grant the motion for directed verdict.

Because our conclusion disposes of the claim against Walker on legal grounds, it is unnecessary to remand the claim to the trial court for further proceedings. *Shaw v Macomb Community College,* 37 Mich App 96; 194 NW2d 558 (1971), *aff'd* 389 Mich 69; 204 NW2d 129 (1973). Accordingly, the trial court's denial of defendant Walker's motion for directed verdict is reversed, and the motion is hereby granted pursuant to GCR 1963, 820.1(7).

## II. CLAIMS BETWEEN PLAINTIFF AND DEFENDANT WILLIAMSON: MEDICAL MALPRACTICE

Following plaintiff's fall from defendant Walker's warehouse roof, and the resultant injury to his foot, he was taken to the emergency room at a local hospital where emergency treatment was performed on his foot, including x-rays, examination by a doctor and the application of a plaster splint and bandages. Upon plaintiff's request, he was transferred to a hospital nearer his home. It was there that defendant Dr. Williamson first saw the plaintiff. Based upon the x-rays of the transferring hospital and the symptoms presented, defendant diagnosed the injury as a severely comminuted fracture of the os calcis (heel bone broken into multiple pieces). Treatment based upon the diagnosis was ordered by defendant.

---

conclusion of plaintiff's case, and Walker then was entitled to a directed verdict, the case must be reviewed without reference to the defendant's testimony. *Snyder v Johnson,* 264 Mich 286, 289; 249 NW 856 (1933), *Campbell v Michigan Consolidated Gas Co,* 313 Mich 410, 414-416; 21 NW2d 181 (1946), *Whitmore v Sears, Roebuck & Co,* 89 Mich App 3, 8-9; 279 NW2d 318 (1979), *lv den* 406 Mich 985 (1979). Compare, *Mitcham v Detroit,* 355 Mich 182, 192; 94 NW2d 388 (1959), *Kasza v Detroit,* 370 Mich 7, 9-11; 120 NW2d 784 (1963). Therefore, we are precluded from considering this post-motion testimony in reviewing the trial court's denial of defendant's motion for directed verdict made at the close of plaintiff's case in chief.

As complications developed in plaintiff's injured foot, defendant was taken off the case and plaintiff was referred to an orthopedic surgeon. This surgeon testified at trial that he examined plaintiff and found that he was suffering from a seriously comminuted fracture of the heel bone with extensive soft tissue injury. Treatment consistent with this diagnosis was commenced. This surgeon testified at trial through the use of depositions, that defendant's treatment was correct but was a more conservative approach than the one he took. Two other physicians testified at trial that, although defendant's treatment would have been appropriate for the injury if the diagnosis had been as defendant declared it to be, it was inadequate to deal with plaintiff's true condition: fractured dislocation of the heel bone. Plaintiff's own orthopedic surgeon stated that he did not think that plaintiff's os calcis was dislocated. Defendant and another witness, who was an orthopedic specialist, testified that defendant properly diagnosed and treated plaintiff's foot. Plaintiff continues to suffer from the injury to his foot.

At the close of trial, the jury returned a verdict of no cause of action in favor of defendant Williamson. Plaintiff appeals of right, raising three issues for our consideration.

First, plaintiff claims that the trial court erred in permitting defense counsel to introduce into evidence plaintiff's original complaint and two amended complaints and to comment on the differences therein. Briefly, plaintiff argues that contents of former pleadings are irrelevant unless inconsistent with plaintiff's position at trial and, since there was nothing in the former pleadings that was inconsistent with plaintiff's position at trial, the former pleadings were not admissions

that could be introduced into evidence. The lower court file reveals that the original complaint did not name Dr. Williamson as a defendant. The first amended complaint named Dr. Williamson as a defendant and alleged that he was negligent in the treatment of plaintiff's injured foot. A second amended complaint eliminated certain allegations of negligence and replaced them with five other allegations of medical malpractice. At trial, defense counsel introduced evidence of the amended pleadings to refute the opening statement of plaintiff's counsel that plaintiff carefully investigated the matter before filing a claim against defendant because he wanted to be careful that defendant would not be improperly accused. No objection was raised by plaintiff to the responding argument of counsel on this matter, although plaintiff objected to the subsequent introduction of the former pleadings.

Although generally viewed as judicial and not evidential admissions, an averment or admission in an adversary's final pleading is competent evidence and can be introduced at trial if relevant and material. *Grand Trunk R Co v Lovejoy,* 304 Mich 35; 7 NW2d 212 (1942), McCormick, Evidence (2d ed) § 265, p 633. Furthermore,

"If a pleading or allegation therein, is amended, withdrawn, or superseded by a substitute pleading, it ceases to be usable as a conclusive judicial admission, but is admissible in evidence in the case in which filed at the instance of the adversary as an evidentiary admission." McCormick, *supra,* 634.

Accord, 31A CJS, Evidence, § 304, 29 Am Jur 2d, Evidence, § 693, p 748, 4 Wigmore, Evidence (3d ed), § 1067, p 88, Anno, 52 ALR2d 516.

Michigan authority is in accord with this latter

rule. *Ward v Alpine,* 204 Mich 619; 171 NW 446 (1919), *People v Nickopoulous,* 26 Mich App 297, 302; 182 NW2d 83 (1970), *lv den* 384 Mich 807 (1971), *cf., Cady v Doxtator,* 193 Mich 170, 172; 159 NW 151; 14 ALR 10 (1916), *Guarantee Bond & Mortgage Co v Hilding,* 246 Mich 334, 344; 224 NW 643 (1929).

Since the allegations against Dr. Williamson contained in plaintiff's second amended complaint and the lack thereof in the former pleading was relevant to refute the assertion of plaintiff's counsel in his opening statement (see generally *People v Moncure,* 94 Mich App 252; 288 NW2d 675 [1979], 5 Callaghan's Michigan Pleading & Practice, § 36.498, p 58), we conclude that the trial judge did not err by admitting these pleadings into evidence.

Second, plaintiff contends that the trial court erred in refusing to give a requested instruction that any negligence of plaintiff in contributing to his fall from the roof was not a defense to the medical malpractice action. In essence, plaintiff asserts that, absent his proffered instruction, the jury was led to believe that the plaintiff's possible contributory negligence was a defense to the medical malpractice action against defendant Williamson. We disagree.

The instruction submitted by the plaintiff was at the time of trial, properly rejected by the trial judge, since it would have charged the jury to completely disregard the issue of contributory negligence as to both defendants. In contrast, the instruction actually read to the jury on the defense of contributory negligence properly confined the issue to defendant Walker:

"As to the Defendant Walker only however, unless

the Plaintiff himself was negligent, and such negligence proximately contributed to his injuries or damages, your verdict will be for the Defendants if the Plaintiff was not injured or damaged, or if the Defendants were not negligent, or if negligent, their negligence was not a proximate cause of the injuries or damages. Or as to the Defendant Walker only, if the Plaintiff himself was negligent, and such negligence was a proximate cause of the injuries or damages."

Since the jury was fully and properly apprised of the applicable law, and the correct portion of plaintiff's requested instruction was submitted to the jury, there was no reversible error. *Berlin v Snyder,* 89 Mich App 38, 41; 279 NW2d 322 (1979), *lv den* 407 Mich 867 (1979).

Plaintiff's reliance on *Podvin v Eickhorst,* 373 Mich 175; 128 NW2d 523 (1964) is misplaced. That case was a medical malpractice action in which defense counsel repeatedly referred to plaintiff's negligence in causing the automobile accident which led to his injuries. The Supreme Court found that the trial court erred in refusing to instruct the jury that plaintiff's negligence should not be considered. In the present case, counsel for defendant Williamson did not raise the issue of contributory negligence or refer to plaintiff's possible negligence in his arguments. *Abbe v Woman's Hospital Ass'n,* 35 Mich App 429, 434-435; 192 NW2d 691 (1971).

Finally, plaintiff contends that the trial court erred in refusing to give requested instructions listing the types of injury to plaintiff for which defendant Williamson could be held liable. Assuming plaintiff's contention is true, the error was harmless, since the jury, by finding no cause of action in favor of the defendant, never reached this question. *Heck v Henne,* 238 Mich 198, 205;

213 NW 112 (1927), *Peden v Carpenter,* 352 Mich
604, 610; 90 NW2d 647 (1958), *Shepard v Barnette,*
4 Mich App 243, 245; 144 NW2d 685 (1966).

No reversible error was committed below with
regard to plaintiff's claim against defendant Wil-
liamson. The jury verdict of no cause of action in
favor of the defendant should be sustained.

Affirmed. Costs to defendants.


J. H. GILLIS, P.J., concurred.


M. J. KELLY, J. *(concurring in part, dissenting in
part).* I concur with the majority opinion with
respect to defendant Williamson.

The majority concludes that reversal is not man-
dated for failure to submit this case to the jury
under the doctrine of comparative negligence with
respect to the cause of action against defendant
Walker, on the ground that the trial court should
have granted defendant's motion for directed ver-
dict. I find that the trial court properly refused to
grant defendant's motion, since plaintiffs pre-
sented sufficient evidence on the element of defen-
dant's alleged breach of the legal duty to maintain
his premises in a reasonably safe condition to go to
a jury.

Evidence of the industry custom of installing an
interior ladder was included in plaintiffs' case in
chief. The majority concludes that such evidence
was inadmissible, absent any proof that defendant
knew or should have been aware of such a prac-
tice. However, examination of the record indicates
that the practice was so widely followed that
defendant may be charged with knowledge of it or
with negligent ignorance. Prosser, Law of Torts
(4th ed), § 33, p 168. Plaintiff Renold L. Beals, Jr.,

testified that interior access ladders existed in all
other grain elevators he had worked on. His em-
ployer, a former millwright, gave similar testi-
mony, as did Mr. John Wilson, the millwright who
accompanied plaintiff Renold on the day of the
accident.

In determining the propriety of the trial court's
denial of defendant's motion, we review the entire
record when plaintiffs' proofs, however slight, cre-
ate at least a permissible inference of defendant's
negligence. *Mitcham v Detroit,* 355 Mich 182; 94
NW2d 388 (1959), *Whitmore v Sears, Roebuck &
Co,* 89 Mich App 3; 279 NW2d 318 (1979), *lv den*
406 Mich 985 (1979). Defendant's testimony pro-
vides additional proof of his own awareness of the
need for additional access to the headhouse. Mr.
Walker testified that the outside ladder used by
plaintiff Renold was an emergency ladder, to be
used as a means of fire escape, but that he had, on
occasion, used it as an access ladder, and that his
employees probably did as well. He further stated
that he had personally observed workmen use the
ladder as a means of access to the headhouse for
cleaning and repair purposes when one man had
already used the one-man lift for elevation from
the inside. Defendant's proofs, properly considered
here, included evidence which served to bolster the
inference of negligence in failing to provide safe
conditions for business invitees.

I would affirm the trial court's denial of defen-
dant Walker's motion for a directed verdict but
reverse for a new trial as to defendant Walker,
consistent with *Placek v Sterling Heights,* 405
Mich 638; 275 NW2d 511 (1979), and *Rivers v Ford
Motor Co,* 90 Mich App 94, 97; 280 NW2d 875
(1979).