## SHAW *v.* WIEGARTZ.

1. NEGLIGENCE—LICENSEES.
   Plaintiff wife, aunt of defendant wife, who went to defendants' newly purchased home to help in the cleaning of the premises *held,* a licensee, in view of the conflicting testimony as to whether she was asked to help or volunteered her services, in action for injuries sustained when she fell down unlighted basement stairway.

REFERENCES FOR POINTS IN HEADNOTES
[1–5] 38 Am Jur, Negligence § 104 *et seq.*
   Liability for injury to guest in home or similar premises. 25 ALR2d 598.
   Duty of a possessor of land to warn adult licensees of danger. 55 ALR2d 525.
[6, 7] 5 Am Jur 2d, Appeal and Error §§ 839, 840.

2. SAME—LICENSEES—BUSINESS INVITEES.

    A licensee is not entitled to the same degree of wariness for his safety on the premises of another as the business invitee.

3. SAME—MINOR SERVICES OF GUEST.

    Minor services performed by the guest for the host during the course of the visit are insufficient to interrupt the status as a guest.

4. SAME—DUTY OF HOST TO GUEST.

    A host has the duty not to injure, by active or affirmative negligence, a guest whose presence is known, not to set a trap or pitfall for the guest, and to warn against or remove defects which the host knows are likely to cause harm to the guest, and which he has reason to believe the guest is not likely to discover for himself.

5. SAME—HAZARDOUS CONDITION OF PREMISES.

    Trial court's finding in action for injuries sustained when plaintiff wife, aunt of defendant wife, on such plaintiff's first visit to the defendants' newly-purchased home to assist in cleaning up preparatory to a scheduled move-in 2 days later that injuries received when she fell down an unlighted basement stairway were the result of a condition which was hazardous but also was a condition of which defendant had no actual knowledge of the hazardous nature requiring warning or other action on such defendant's part *held,* supported by evidence.

6. APPEAL AND ERROR—NONJURY CASES—FINDINGS OF FACT—EVIDENCE.

    Findings of fact by a trial court in a nonjury action will not be reversed on appeal unless the findings are contrary to the clear preponderance of the evidence.

7. SAME—NONJURY CASES—FINDINGS OF FACT—CREDIBILITY OF EVIDENCE—PREPONDERANCE OF EVIDENCE.

    A trial judge in a nonjury case may give such weight to the testimony as in his opinion it is entitled to, and his findings will not be reversed unless the evidence clearly preponderates in the opposite direction.

Appeal from Oakland; Pratt (Phillip), J. Submitted Division 2 May 14, 1965, at Detroit. (Docket No. 214.) Decided June 21, 1965,

Complaint by Allan Shaw and Eve M. Shaw against Mr. and Mrs. Albert Wiegartz for injuries sustained from a fall down a flight of stairs by Eve M. Shaw. Judgment for defendants. Plaintiffs appeal. Affirmed.

*Evans & Shipper* (*R. L. Shipper*, of counsel), for plaintiffs.

*John K. Irwin, Jr.*, for defendants.

FITZGERALD, J. No single human act has been so tortured by the law as the simple deed of going onto the property of another and being injured. Courts, in their efforts to refrain from imposing undue burdens on injured parties or landowners, have set up categories and categories-within-categories to designate the "status" of the injured and the "knowledge" of the landowner.

The tangled skein created by the law can only be unravelled by close inspection and this saga is no exception to this precept.

Plaintiff Eve M. Shaw is an aunt of defendant Dorothy Wiegartz. The husbands of each party, though named in the suit, figure little in the statement of events. Plaintiff suffered a fall down a basement stairs in defendants' home on August 24, 1963. Trial, on June 9, 1964, without a jury, resulted in a no cause of action on the ground of lack of knowledge of the hazardous stairs on the part of defendant. Plaintiff brings this appeal.

From time to time, previous to the accident, plaintiffs had lived with defendants in Royal Oak, contributing part of the food but paying no rent. Defendants purchased a new home at Walled Lake during the summer of 1963 and were scheduled to move on August 24th. Sometime around August 22d, the parties had a conversation relative to the clean-

ing-up and moving process. Plaintiff claims defendant asked her to come out and help her. Defendant claims that Mrs. Shaw volunteered for duty. At any rate, there was no discussion regarding compensation for Mrs. Shaw's services.

On August 24th, Mrs. Shaw went to the premises for the first time with two other ladies and arrived some 15 minutes before defendant. The prior owners had moved out the day before. While getting ready to go to work, Mrs. Shaw walked to a darkened area in a normal manner and speed, thinking it was a hall (she asked specifically, "What is this, a hall?") and fell down the basement stairs, breaking bones in both ankles.

Meanwhile, Dorothy Wiegartz, who had arrived on the scene, was talking on the telephone and had no chance to answer plaintiff Shaw's question. Neither had she told Mrs. Shaw of the nature of the stairs, described in testimony as the "well-type," being an opening cut out of the floor. There was no door as such, and the opening was mostly concealed by the outside door to the kitchen when that door was open. The walls were a continuation of the kitchen walls, the floor was a continuation of the kitchen floor. There was a light switch and a light in the stairwell, but at the time of the fall, the light was not on. There was no handrail. The ceiling was a continuation of the kitchen ceiling and the wall paint of the stairwell and the kitchen were the same.

The defendant had been on the premises three times before the day of the accident: one trip she had not been in the house; one trip she had not gone to the basement; her other trip included a visit to the basement in the company of the prior owners and while it was lighted. She testified she saw nothing unusual or hazardous at that time.

Thus, the relationships of the parties and the treacherous conditions bring us directly to the is-

sues: What was the legal status of Mrs. Shaw, and
what duty of care was owed her, and did defendant
have sufficient knowledge of a hazardous condition
to be charged with a legal duty to warn of the stairs?

A trespasser Mrs. Shaw was not, and we can re-
ject that she was a business invitee on the premises
since it was neither urged by counsel nor carried
out by proofs. About the best that can be said for
her is that she was a licensee, as befits the conflict-
ing testimony as to whether she was asked to help
in the cleaning or whether she volunteered her
services.

Authorities have universally agreed that the "li-
censee" is not entitled to the same degree of wari-
ness for his safety on the premises of another
as the "business invitee." If the family relationship
is close, as is the case here, the most common term
applied to such a visitor is a "gratuitous licensee"
and this is borne out by the American Law Insti-
tute's Restatement of Torts, § 331.

But what of the visitor who confers a benefit on
the host during the course of the visit? It is well
stated in 25 ALR2d 598, 607 that minor services
performed by the guest for the host during the
course of the visit will not be sufficient to interrupt
his status as a guest. The weight of authority
for the duty owed licensees is likewise set out in 25
ALR2d 598, 602 where it states that:

"The host's only duty is not to injure, by active
or affirmative negligence, a guest whose presence
is known, not to set a trap or pitfall for the guest,
to *warn against or remove defects which the land-
lord knows are likely to cause harm to the guest,* and
which he has reason to believe the guest is not
likely to discover for himself." (Emphasis sup-
plied.)

The court in its opinion found that the stairs in question were hazardous, but further stated that it could not find "that defendant had actual knowledge of a hazardous condition requiring warning or other action on her part."

Plaintiff urges a long succession of Michigan cases, beginning with *Samuelson* v. *Cleveland Iron Mining Company* (1882), 49 Mich 164, and ending with *Kroll* v. *Katz* (1965), 374 Mich 364. But the majority of these cases deal with business invitees and, while helpful, are not controlling.

Such cases, however, stand for the proposition that it is for the trier of fact to determine whether or not the possessor of land knew of the danger or ought to have known about the danger. The court in the instant case found that defendant did not have such knowledge *nor could such knowledge be imputed to her.*

The recent case of *Miller* v. *Miller* (1964), 373 Mich 519, is perhaps more factually in point in that a family relationship was also involved. Here, plaintiff had gone to her son's home for a social visit and to deliver clothing for his children. Finding the screen door stuck, she was advised by defendant to give it a kick which she did, thereupon hurtling out the door and down the steps. The Court cited with approval Restatement of Torts, § 342, p 524, "defendant's duty to plaintiff required they exercise reasonable care to disclose to her *dangerous defects which were known to them* and were likely to be undiscovered by plaintiff." (Emphasis supplied.)

We agree with the trial judge that we cannot impute superior knowledge to the defendant in the instant case. Her testimony reveals that the stairs were not hazardous in her estimation:

"*Q.* Did you have knowledge of this stairway before the accident?

"*A.* Well, what do you mean by knowledge? Did I know it was there?

"*Q.* Yes.

"*A.* I realized it was there, but I didn't realize it was a hazard."

What then is the duty owed to gratuitous licensees? Certainly protection from active wrongdoing, traps, gross negligence, and willful injury to name but a few. But unsuspected or undiscovered hazards? We think not. To place the duty of knowing every potential danger upon the owner of property —where he has had no reasonable opportunity to fully inspect his premises—is to place upon him an intolerable burden.

Protection from known hazards, yes. An ironclad guarantee of safety against all hazards, no.

Plaintiff put in her proofs fully and completely and, indeed, was allowed to reopen over objection for the purpose of submitting the question of defendant's knowledge of the condition that the court found dangerous. The proofs raised fact questions which were determined by a judge, acting without a jury. The Supreme Court of this State has frequently restated the rule that in a nonjury law case, the findings of fact by the trial judge will not be reversed unless contrary to the clear preponderance of the evidence.

A concise statement of this rule will be found in *Mallory* v. *Pitcairn* (1943), 307 Mich 40, 47:

"The trial court saw and heard the witnesses and, as trier of the facts, was best able to judge the credibility of, and the weight to be accorded, their testimony. We have repeatedly said that in cases tried without a jury the trial judge may give such

weight to the testimony as in his opinion it is entitled to, and that in such cases we do not reverse unless the evidence clearly preponderates in the opposite direction."

This rule was reiterated as late as 1965 in *Kevreson* v. *Michigan Consolidated Gas Company,* 374 Mich 465.

After a review of the record, we cannot accord Mrs. Shaw any greater status than the trial court gave her, nor can we impose any greater duty upon the Wiegartzes than did that court.

Accordingly, the judgment of no cause of action is affirmed. Cost to appellees.

QUINN, P. J., and T. G. KAVANAGH, J., concurred.