## DOBBEK *v.* HERMAN GUNDLACH, INC.

1. NEGLIGENCE—EVIDENCE—DIRECTED VERDICT—CONFLICTING CLAIMS.
   Refusal of trial judge to direct a verdict for defendant in negligence action *held*, not error even though there were conflicts between what plaintiff claimed when his deposition was taken and what he said at the jury trial where these conflicts were fully exposed at the jury trial.

2. PLEADING—AMENDMENT—NEGLIGENCE.
   It was not reversible error for the trial judge to allow the plaintiff in a negligence action to amend his pleadings to conform to the proofs.

3. NEGLIGENCE—INSTRUCTIONS TO JURY—ORAL REQUESTS.
   Refusal by the trial judge to give charges to the jury in line with oral expressions of defense counsel, who did not reduce their requested charges to writing after 7 hours of conferences on proposed charges *held*, not reversible error.

4. SAME—CONTRIBUTORY NEGLIGENCE—JURY QUESTION.
   Contributory negligence is usually a matter for jury determination and should not be determined by the trial judge unless there could be no reasonable difference of opinion on the proximate cause of any event.

5. SAME—WORDS AND PHRASES—LICENSEES AND INVITEES—DEFINITIONS.
   An invitee is one who is on the premises for a purpose which is mutually beneficial to the invitee and the invitor, while a licensee is on the premises because of some benefit he derives from being there and is only tolerated on the premises by the owner.

---

REFERENCES FOR POINTS IN HEADNOTES

[1]  38 Am Jur, Negligence § 344 *et seq.*
[2]  41 Am Jur, Pleading § 309.
[3]  53 Am Jur, Trial § 516.
[4]  38 Am Jur, Negligence § 348.
[5]  38 Am Jur, Negligence §§ 96, 104.
[6]  38 Am Jur, Negligence § 96 *et seq.*

6. SAME—INVITEE AND LICENSEE—SUBCONTRACTOR—PIPEFITTER.

  A pipefitter employed by a subcontractor in defendant's plant for
  the purpose of repairing or improving it is working to benefit
  defendant, and enjoys the status of an invitee in the locations
  to which it is necessary for him to go in the course of his
  work; therefore, it is the duty of defendants to keep those lo-
  cations in a safe condition or to warn the worker of danger.

Appeal from Ontonagon, Wright (Robert R.), J. Submitted Division 3 May 7, 1968, at Marquette. (Docket Nos. 3,124 and 3,197.) Decided September 26, 1968. Rehearing as to defendants White Pine Copper Company and Trousil denied November 7, 1968. Leave to appeal denied as to Herman Gundlach, Inc., February 20, 1969. Leave to appeal denied as to White Pine Copper Company and Trousil, March 12, 1969. 381 Mich 806.

Complaint by John T. Dobbek and Marion Dobbek against Herman Gundlach, Inc., White Pine Copper Company, and Jesse Trousil for injuries sustained in a construction accident. Verdict and judgment for plaintiffs. Defendants appeal. Affirmed.

*Walsh* and *Munro* (*Allen R. Briggs* and *Charles L. Santini,* of counsel), for plaintiffs.

*Norman McLean,* for defendant Herman Gundlach, Inc.

*Humphrey & Weis,* for defendants White Pine Copper Company and Jesse Trousil.

McGREGOR, J. White Pine Copper Company owns and operates a copper mine and smelting plant. This action derives from a personal injury suffered in an accident which occurred on March 10, 1964, in a three-level pumphouse operated by White Pine,

which engaged various prime contractors for the purpose of improving its facilities, especially the pumphouse, with the prime contracts being extensively subcontracted.   John T. Dobbek (hereinafter referred to as plaintiff) worked as a pipefitter and plumber for one of the subcontractors, and in 1963 his gross income was $8,415.   Occasionally in the work on the pumphouse, heavy pumps were lowered from the top level by a permanently installed overhead crane.   During the period from approximately 4:30 p.m. on March 9, 1964, to 8 a.m. on March 10, 1964, the pumphouse was solely and exclusively occupied by employees of the White Pine Copper Company, including Jesse Trousil, the pumphouse operator.   Employees of defendant Herman Gundlach, Inc., a prime contractor on a different project in the pumphouse, used the overhead crane on March 9th for lowering materials with the guardrail removed.   Dobbek did not participate in this removal of the guardrail, but there is evidence that on the preceding late afternoon, he observed its removal while in the pumphouse preparing for the installation of the large check valve.

The needed check valve arrived at the pumphouse on March 10, 1964, and Dobbek made arrangements for its immediate installation.   The use of the overhead crane was necessary to move the heavy valve, and defendant Trousil offered to assist the plaintiff.   Dobbek walked around the end of the railing and on to a pipe located 5′ 8″ below the top rail.   Testimony indicated that the main work area from which the normally-used stairway descends to the lower level was cluttered with various materials and tools.   Trousil told Dobbek to go below and that he, Trousil, would lower the check valve.   Dobbek, intending to guide the valve through the maze of pipes, stepped around the end of the railing on to a 24-inch pipe and attempted to position himself to guide the

check valve down to the lower level. In doing so, Dobbek leaned toward the guardrail for support and balance; the unbolted guardrail dislodged, causing Dobbek to lose his balance and fall about 8 feet to a steel grate catwalk. Later the same day, the section of pipe which had dislodged was found to contain no securing bolts. Testimony disclosed that the bolts had been removed from the railing on the previous afternoon.

The complaint alleges that employees of Gundlach Company removed the railing on the morning of March 10, 1964, replaced the railing but failed to replace the bolts and to warn the plaintiff about their failure. This statement conflicts with the deposition taken from the plaintiff. Little evidence was produced to substantiate these allegations of the complaint. In the discovery deposition, taken on September 11, 1965, the plaintiff testified under oath that he did not see who had removed the bolts or the railing on the date of the accident. In an affidavit dated March 22, 1965, Dobbek accused Robert Barrette, a Gundlach employee, of removing both end bolts from the hand rail. At trial, plaintiff testified that he saw Barrette remove only one bolt.

Defendant Gundlach Company contends that using plaintiff's version most damaging to Gundlach and considering it in a light most favorable to plaintiff Dobbek, a reasonable mind would conclude that plaintiff saw Barrette creating a dangerous condition by removing a bolt from the pipe rail; that plaintiff then knew or should have known that leaving a railing which was removable and unbolted on one end constituted danger from which injury might reasonably be anticipated; that plaintiff was totally forgetful and inattentive to the situation; that plaintiff voluntarily continued to ignore the circumstances when he was in the premises the following morning,

thereby contributing to his own fall and endangering the safety of defendant Trousil; that an ordinarily prudent person would not have totally disregarded the situation if it was true in fact; that plaintiff was guilty of contributory negligence as a matter of law and was, in fact, guilty of wanton and wilful misconduct; and that plaintiff's negligence was not a question upon which the minds of reasonable men should differ, citing *Neal* v. *Cities Service Oil Co.* (1943), 306 Mich 605, 609.

Medical bills for Dobbek totalled $1,631.49 and he was unable to work for nearly 20 months. His doctor estimated that his future medical bills would probably not exceed a few hundred dollars during the next 5 years.

The case went to the jury after numerous motions for a directed verdict and the plaintiff's amendment of his pleadings to conform with the proofs, as allowed by the trial judge. The jury rendered a verdict for Dobbek in the sum of $65,000 and for plaintiff's wife, Marion Dobbek, in the sum of $5,000, jointly against all three of the named defendants-appellants. Defendant Gundlach Company further contends that, if the issues are resolved against the defendants, a remittitur against plaintiff Dobbek for $40,000 or $45,000 should be entered.

Several claims of error have been raised on this appeal: the case never should have been submitted to the jury because of procedural irregularities; the plaintiff was guilty of contributory negligence as a matter of law; White Pine Copper Company should be held to less stringent rules of care because the plaintiff was only a licensee in the pumphouse; and the pumphouse operator had no duty to the plaintiff.

Without question, there were some procedural irregularities in the conduct of the trial, and there were statements made by the plaintiff at trial which

conflicted with statements he had made in prior depositions. These conflicts were fully exposed at the jury trial. Considering the record as a whole, we cannot say that the trial judge committed reversible error or abused his discretion in refusing a directed verdict because of the conflict. Neither was it reversible error to allow the plaintiff to amend his pleadings to conform to the proofs. Also, we cannot say that there was reversible error on the part of the trial judge when he refused to charge the jury in line with oral expressions of the defense attorneys, who did not reduce their requested charges to writing after 7 hours of conferences on the proposed charges.

Contributory negligence is usually a matter for jury determination and should be determined by the trial judge only when there could be no reasonable difference of opinion on the proximate cause of an event. *Barnabee* v. *Spence Brothers* (1962), 367 Mich 46. We find no reversible error in the trial judge's action on this point.

White Pine Copper Company contends that the plaintiff was a mere licensee in the pumphouse, or at least, on the pipes on which he was standing, and therefore, White Pine should only be liable for wanton or wilful misconduct, which was not shown. An invitee has been defined as one who is on the premises for a purpose mutually beneficial to both the invitee and the invitor. In theory, a licensee desires to be on the premises because of some personal benefit from being there, and is merely tolerated on the premises by the owner. See *Shaw* v. *Wiegartz* (1965), 1 Mich App 271; 33 Am Jur, Licenses, § 94, p 401. Therefore, the argument follows that an owner should not be required to do something special to insure the safety of those from whom he derives no benefits. Although defendants offer eloquent arguments of law that a high duty of care

is not owed to mere licensees, the arguments do not fit the facts. Plaintiff was working in the pumphouse to benefit White Pine by installing new equipment. Testimony indicated that in order to install the equipment it was necessary for plaintiff to stand on pipes not intended for walking and, therefore, be required to balance himself by some means. This Court is not impressed by the argument that the plaintiff was a mere licensee in relation to White Pine. There was a duty on the part of White Pine to maintain its premises in a safe condition for the plaintiff or, in the alternative, to warn the plaintiff of the dangerous condition of the premises. *Kroll* v. *Katz* (1965), 374 Mich 364.

After the comprehensive court charge without substantial objection by defense counsel, the jury found that the pumphouse operator had a duty to inspect the pumphouse to see that it was in a safe condition. The jury determined that employees of defendant Gundlach removed the bolts.

On the final question of the remittitur, we are not persuaded that the jury determination of facts or damages should be upset.

Affirmed. Costs to appellees.

FITZGERALD, P. J., and J. H. GILLIS, J., concurred.