LEEP v McCOMBER

Docket No. 56699. Submitted March 2, 1982, at Grand Rapids.—
Decided August 23, 1982. Leave to appeal applied for.

Richard Leep, a minor, was seriously injured when an icicle
hanging on the side of the home of Michael McComber fell,
striking Leep in the eye. Leep and McComber's son were
playmates and Leep often completed his walk home from school
by transiting McComber's property, usually walking down the
side of the house from which the icicle fell. McComber was
aware that Leep walked across his property on the way home
from school. Leep, by his mother and natural guardian, Janet
Frenak, brought suit in Calhoun Circuit Court against Mc-
Comber. The court, Stanley Everett, J., granted a directed
verdict for the defendant. The plaintiff appeals alleging that
the trial court erred in directing a verdict for the defendant
because a private homeowner is liable for injuries caused by
the natural accumulation of snow or ice upon his own property
if he knows or reasonably should know that the presence of
such conditions creates a risk of harm to child licensees. *Held:*

The trial court's granting of a directed verdict should be
affirmed. The formation of icicles on a home is a natural
occurrence in this climate. Here, the homeowner did not in-
crease the natural hazards to the plaintiff but occasionally
endeavored to minimize the natural hazards by knocking the
icicles down. The status of the plaintiff regarding the property
was a question of fact. From the evidence presented, the jury
could have found the existence of a duty owed by the defendant

REFERENCES FOR POINTS IN HEADNOTES
[1] 62 Am Jur 2d, Premises Liability §§ 97-130.
[2, 4, 5] 62 Am Jur 2d, Premises Liability § 51.
[3, 4] 62 Am Jur 2d, Premises Liability §§ 79-84.
   Duty of possessor of land to warn adult licensees of danger. 55
   ALR2d 525.
[4] 62 Am Jur 2d, Premises Liability § 74.
[5] 62 Am Jur 2d, Premises Liability § 39.
[6] 62 Am Jur 2d, Premises Liability § 277.
   Liability for injuries from ice or snow on residential premises. 54
   ALR3d 558.

to the plaintiff and that the plaintiff sustained damages. Any finding that the defendant breached such a duty, however, would be speculation. The evidence presented did not reach the quantum of proof necessary to present the case to the trier of fact.

Affirmed.

D. F. WALSH, P.J., concurred. He agreed with the result reached in the majority opinion but felt that an owner of land should not be liable to a licensee for injuries sustained as a result of natural accumulation of ice and snow.

OPINION OF THE COURT

1. TORTS — LANDOWNERS — INJURED PERSONS.

Courts, in an effort to refrain from imposing undue burdens on injured parties or landowners, have set up categories and categories within categories to designate the status of the injured party and the knowledge of the landowner where a person is injured on the land of another.

2. TORTS — LICENSEES.

A licensee has been defined as a person who enters on or uses another's premises with the express or implied permission of the owner or person in control thereof; a licensee is a person who is privileged to enter or remain on land only by virtue of the possessor's consent.

3. TORTS — POSSESSORS OF LAND — LICENSEES — PERSONAL INJURIES.

A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if, (a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and (b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and (c) the licensees do not know or have reason to know of the condition and the risk involved.

4. TORTS — LICENSEES — INVITEES.

A licensee, as distinguished from an invitee, is one who enters another's land because a personal benefit will be derived by so doing; and while there, his presence is merely tolerated; while a licensee's presence is merely tolerated, the possessor of land is still required to warn the licensee of known dangers; a licensee is one who desires to be on the premises because of

some personal, unshared benefit and is merely tolerated on the premises by the owner.

5. TORTS — LICENSEES — INVITEES.

An intent to recognize the subordination of licensee status to invitee status regarding a person's relation to the land of another is seen where the adjective "mere" precedes the word "licensee".

CONCURRENCE BY D. F. WALSH, P.J.

6. TORTS — POSSESSORS OF LAND — LICENSEES — ICE AND SNOW.

*An owner or occupant of premises should not be liable to a licensee for injuries sustained as a result of the natural accumulation of ice and snow.*

*Sommers, Schwartz, Silver & Schwartz, P.C.* (by *Richard D. Toth),* for plaintiff.

*Sullivan, Hamilton, Ryan & Schulz,* for defendant.

Before: D. F. WALSH, P.J., and CYNAR and W. F. HOOD,* JJ.

CYNAR, J. This litigation arises from a personal injury sustained by plaintiff while on the property of defendant. A jury trial commenced on February 10, 1981. On February 11, 1981, the plaintiff having rested his case, the trial judge granted defendant's motion for a directed verdict, based upon the plaintiff's failure to establish grounds for recovery. Plaintiff appeals as of right from this judgment. We affirm.

Plaintiff was born on April 16, 1968. On January 27, 1976, he suffered the injury which is the subject of this suit. Plaintiff and John McComber, defendant's son, were playmates who walked to and from school together about 99% of the time. Plaintiff often completed his walk home by transit-

* Circuit judge, sitting on the Court of Appeals by assignment.

ing defendant's property—specifically by walking down the driveway along one side of defendant's house. On the day of the injury, plaintiff and John McComber had left school together but had become separated along the way and plaintiff continued walking alone. Plaintiff claims that he got to defendant's house, heard a noice, looked up, and was struck in the eye by an icicle. The resultant injury necessitated removal of plaintiff's eye, which was replaced by an artificial eye.

Plaintiff testified at trial that he was walking along the side of the house "without the porch" when the injury occurred. Plaintiff testified that he did not know the height of the icicles but if he jumped, he could not touch the icicles. Herold Reuss, the chief of police for the City of Marshall, who had responded to plaintiff's screams, seemed to recollect, although he was not positive, that he thought the child told him that he reached up and touched the icicle prior to its falling.

Michael McComber acknowledged that he was aware of plaintiff's habit of traversing his property when returning home from school. Defendant indicated the date, and stated that at the time the plaintiff was injured, he and his wife were away from their home pursuant to their employment. He assumed that his son and plaintiff walked down the driveway side of his house, although he admits that he did not specifically tell them not to go on the other side. He stated that during the winter the icicles accumulated around his home and all houses on the block. Defendant indicated that icicles accumulate on the porch side of the house but most icicles accumulated on the driveway side of his house. He testified that on certain occasions he would knock down the icicles, either because he figured that they were "too long" or to

prevent the children from playing with them. He kept a wash broom with a handle 13 feet long which he used to knock down the icicles. Defendant claims that he had previously warned the children not to play around icicles and that he had repeated those warnings as often as three times a month. He testified that the reason he warned the children about icicles was that they might get bumped in the head, though he never anticipated a serious injury. He further testified that he had specifically warned plaintiff about the icicles.

After plaintiff had completed his proofs, defendant moved for a directed verdict, which was granted.

Plaintiff argues that the trial court erred in directing a verdict for the defendant because a private homeowner is liable for natural accumulation of snow or ice upon his own property if he knows or reasonably should know that the presence of such conditions creates a risk of harm to child licensees.

It is easy enough to walk into a maze, however the intricate network often causes confusion before one finally finds the pathway to the exit. So it is with the review of the law relating to the question before us. In *Shaw v Wiegartz,* 1 Mich App 271, 273; 135 NW2d 565 (1965), Judge FITZGERALD remarked:

"Courts, in their efforts to refrain from imposing undue burdens on injured parties or landowners, have set up categories and categories-within-categories to designate the 'status' of the injured and the 'knowledge' of the landowner."

Since the duty owed by the landowner depends upon the status of the injured party at the time of the injury, it is necessary to ascertain the status of

plaintiff in the instant case. Defendant acknowledges that the proofs viewed in the most favorable light toward the plaintiff place plaintiff in the status of a bare or mere licensee.

A licensee has been defined as a person who enters on or uses another's premises with the express or implied permission of the owner or person in control thereof. *Cox v Hayes,* 34 Mich App 527; 192 NW2d 68 (1971). The Restatement definition is similar: A licensee is a person who is privileged to enter or remain on land only by virtue of the possessor's consent. 2 Restatement Torts, 2d, § 330, p 72. The words "consent" or "permission" indicate that the possessor is in fact willing that the other shall enter or remain on the land, or that his conduct is such as to give the other reason to believe that he is willing· that he shall enter, if he desires to do so. *Id.,* Comment e. It is reasonable to accept that the plaintiff could be characterized as a licensee by implied permission. In defendant's view, Michigan jurisprudence recognizes certain classes of licensees, not all of which are entitled to the same degree of care by a landowner. One who is on premises by reason of the acquiescence or sufferance of the landowner, he argues, is considered a "mere" or "bare" licensee. Defendant has the opinion that a landowner's duty regarding such a mere licensee is considerably less than that duty owed other forms of licensees, notably the social guest. Examination of earlier Michigan cases raises a question for the basis of defendant's classification.

In *Hargreaves v Deacon,* 25 Mich 1, 5 (1872), the plaintiff's decedent, a small child, was killed by falling into a cistern on the premises of the defendants. It had been revealed that the plaintiff was on the property of the defendant landowner not by

any special permission, but rather by tacit acquiescence.

Under *Hargreaves,* a landowner owed no duty to such licensees other than to refrain from wantonly or willfully injuring them. *Id.,* 4. This view was reiterated in *Formall v Standard Oil,* 127 Mich 496, 502; 86 NW 946 (1901): "[T]acit permission is not enough to establish liability for negligent conditions on one's own premises." The plight of child licensees was once again considered in *Peck v Adomaitis,* 256 Mich 207; 239 NW 278 (1931). In that case the defendant left a bonfire unattended on her property even though she was aware that children often went upon the premises. The Court held that there was no legal duty on the part of the defendant to guard the child against the danger of coming into contact with the fire:

"Defendant was under no obligation to trespassers or licensees to keep her premises safe for use of children as a playground." *Id.,* 210.

The *Peck* case was cited with approval in *Morris v Lewis Mfg Co,* 331 Mich 252; 49 NW2d 164; 28 ALR2d 214 (1951). In *Morris,* the defendants owned a lot on which was situated a partially completed house and sundry piles of building materials. The plaintiff's complaint charged that the defendants knew that the area was being used by neighborhood children as a playground, but took no steps to warn or otherwise to protect the children. The plaintiff's decedent was killed by falling lumber while playing on defendants' property. The Court affirmed defendants' motion to dismiss, holding that its opinion in *Peck, supra,* was controlling.

Another line of cases recognized a heightened duty on the part of a landowner when the latter

was cognizant of the immediate presence of a licensee upon his property. The Michigan Supreme Court in *Schmidt v Michigan Coal & Mining Co,* 159 Mich 308, 311-312; 123 NW 1122 (1909), held:

"The weight of authority would appear to be that after the owner of premises is aware of the presence of a trespasser or licensee, or if in the exercise of ordinary care he should know of their presence, he is bound to use ordinary care to prevent injury to them arising from active negligence."

See also *Polston v S S Kresge Co,* 324 Mich 575; 37 NW2d 638 (1949). An additional duty arises when, as in the instant case, a licensee habitually uses the same route or path through the landowner's property. As stated in *Morrison v Carpenter,* 179 Mich 207, 217; 146 NW 106 (1914):

"If a licensee has been using a well-defined path openly and continuously, we think he takes only such risks as have existed during the time of using the same * * * [and] if the licensor interferes with said path by making it more dangerous, he should give notice to the licensee, or guard the dangerous place so made."

Defendant argues that this is the state of the law today—that a landowner owes no duty to a mere licensee other than to refrain from injuring him through willful or wanton conduct, active negligence when the licensee's presence is known, or by making the licensee's habitual path or route more dangerous. No duty exists, he contends, with regard to passive negligence, *e.g.,* failure to warn of or remedy a hazardous condition on the premises. Defendant has not properly interpreted the more recent case law. In *Preston v Sleziak,* 383 Mich 442, 453; 175 NW2d 759 (1970), a case involving social guests, the Court observed:

"The duty which occupiers of land owe their licensees is best expressed by 2 Restatement Torts, 2d, § 342, p 210:

" 'A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if,

" '(a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and

" '(b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and

" '(c) the licensees do not know or have reason to know of the condition and the risk involved.' "

Defendant contends that this language applies only to the care of a social guest—one who is present on the landowner's premises by express invitation. The Restatement does recognize several subcategories of licensees, namely: social guest, members of the possessor's household, and those whose presence on the land is solely for their own purposes (mere licensees). 2 Restatement Torts, 2d, § 342, Comment h, p 175. But § 342, *supra,* makes no distinction between those subcategories of licensees and is clearly intended to apply equally to all licensees. Defendant points to the *Preston* Court's reference to Cooley on Torts as indicative of the Court's recognition of a distinction between social guests and mere licensees:

" 'The distinction between a visitor who is a mere licensee and one who is on the premises by invitation turns largely on the nature of the business that brings him there, rather than on the words or acts of the owner which precede his coming. Permission involves leave and license, but it gives no right.' 3 Cooley, Torts (4th ed), § 440.

"Consonant with the above distinction and more in keeping with the factual circumstances surrounding the case of a social guest is the statement found at p 198:

" 'The owner or occupant of premises is not under any legal duty to keep them free or safe from the danger of obstructions, pitfalls, excavations, trap doors or openings in floors for persons who go upon, into, or through the premises, *not by his invitation, express or implied, but for their own pleasure or convenience, though by his acquiescence or permission, and who, therefore, are mere licensees. Such a visitor enjoys the license subject to the attendant risk.*' " *Preston, supra,* 448, 449.

Defendant argues that that language was embraced by the court as a statement of the duty owed mere licensees, as opposed to social guests. But the intent of the Court was to point out the distinction between *invitees* and social guests. *Id.,* 448. Moreover, a critical reading of those passages from Cooley on Torts reveals that the use of the word "invitation" denoted invitation for business purposes. The emphasized portion of the above passages applied explicitly to licensees by acquiescence *or permission,* thus indicating inclusion of both "mere" licensees *and* social guests. The statement that such a visitor "enjoys the license subject to the attendant risk" was an accurate statement of Michigan case law as it was at the time of *Hargreaves, supra,* however that statement does not accurately state the present law regarding the duty owed to licensees by landowners. A careful reading of the *Preston* opinion indicates that the statement of duty found in § 342 of Restatement Torts, 2d, is applicable to licensees who are not social guests.

Support for this position is found in *Cox v Hayes, supra.* In that case the defendant had allowed the plaintiff, a three-year-old deaf mute, to

play in his yard on several occasions. On one such occasion, the girl was bitten by the defendant's dog. In assessing the duty owed the plaintiff, the Court stated:

"A licensee, as distinguished from an invitee, is one who enters another's land because a personal benefit will be derived by so doing; and while there, his presence is merely tolerated. *Dobbek v Herman Gundlach, Inc,* 13 Mich App 549, 554 [164 NW2d 685] (1968). While a licensee's presence is merely tolerated, the possessor of the land is still required to warn the licensee of known dangers. *Dobbek v Herman Gundlach, Inc, supra,* 555; *Kroll v Katz,* 374 Mich 364 [132 NW2d 27] (1965); *Shaw v Wiegartz, supra." Cox v Hayes, supra,* 532.

More recently in *Socha v Passino,* 105 Mich App 445, 448; 306 NW2d 316 (1981), the Court approved a similar definition of licensee:

"On the other hand, a licensee is one who desires to be on the premises because of some personal, unshared benefit and is merely tolerated on the premises by the owner." (Citation omitted.)

The Court then noted: "The host of a licensee can be liable if he had 'reason to know of' the dangerous condition." (Citation omitted.) *Id.,* 449, fn 2. See also *Gilbert v Sabin,* 76 Mich App 137; 256 NW2d 54 (1977). Those cases employ a definition of licensee broad enough to encompass a licensee who acquires his status by acquiescence of the landowner, as did plaintiff in the instant case. They are uniform in recognizing a duty on the part of landowners to warn such licensees of known dangers.

The more recent Michigan cases appear to embrace the language of § 342 of the Restatement,

without regard to the specific subcategory of licensee under which a plaintiff falls. The duties enumerated in that section should apply in this case, notwithstanding defendant's characterization of plaintiff as a "mere" licensee. Where the adjective "mere" precedes the word "licensee", at least in the more recent cases, the intent is to recognize the subordination of licensee status to invitee status.

In the case of *Quinlivan v Great Atlantic & Pacific Tea Co, Inc,* 395 Mich 244; 235 NW2d 732 (1975), the plaintiff parked his automobile in the A & P store parking lot intending to shop at the A & P store. The parking lot was snow-covered and icy, although snow had not fallen for several days. After leaving his automobile, plaintiff took several steps in the direction of the A & P store, felt his feet fly from under him and fell. The court concluded that A & P, as proprietor of a business, owed a duty to the plaintiff invitee to use reasonable care to protect against hazards arising from natural accumulation of ice and snow. The court overruled existing law to the extent that no duty was owed to the invitee respecting hazards arising from natural accumulation of ice and snow.

Drawing on the general duty owed by a possessor of land to an invitee as set forth in 2 Restatement Torts, 2d, § 343, pp 215-216, the *Quinlivan* Court concluded:

"As such duty pertains to ice and snow accumulations, it will require that reasonable measures be taken within a reasonable time after an accumulation of ice and snow to diminish the hazard of injury to the invitee." 395 Mich 244, 261.

While *Quinlivan* limits its language to cases involving invitees, plaintiff in the instant case

maintains that nothing in the decision precludes the taking of a similar approach toward licensees.

Neither recent case law recited herein nor § 342 of the Restatement indicate that no duty is owed to the licensee by landowners respecting hazards arising from natural accumulation of ice and snow. It is logical to conclude that the defendant in the instant case was under a duty to exercise reasonable care to warn of or eliminate certain conditions on his property which he should have realized involved an unreasonable risk of harm to plaintiff.

While recognizing the duty owed by the landowner to the licensee, the trial court correctly granted the motion for a directed verdict. The trial court agreed that the status of the plaintiff was at least a question of fact for the jury which might, on the evidence, find him to be a licensee. The trial court observed that icicles hanging from a home in this climate are a natural accumulation, occurring every winter, on everybody's home. Snow on the roof melts, and flows off, freezes and forms icicles. The homeowner did not increase the natural hazards but, on occasion at least, endeavored to minimize the natural hazards by knocking the icicles down. Doing so did not place a burden on the homeowner to knock the icicles down each time they form. On the basis that the case did not reach the quantum of proof which permits the case to go to the jury, the trial court granted a directed verdict. We agree. From the evidence presented, the jury could have found the existence of a duty toward plaintiff and that plaintiff sustained damages. Any finding that defendant breached such a duty, however, would be speculation.

Affirmed.

W. F. Hood, J., concurred.

D. F. Walsh, P.J. *(concurring)*. I concur in the result. I write separately to express my disagreement with the majority's conclusion that an owner of land can be liable to a licensee for injuries sustained as a result of natural accumulation of ice and snow. In my judgment, *Quinlivan v Great Atlantic & Pacific Tea Co, Inc,* 395 Mich 244; 235 NW2d 732 (1975), relied upon by the majority, should be limited in its application to cases involving business invitees. It should not be extended to apply to licensees.