KRESKI v MODERN WHOLESALE ELECTRIC SUPPLY COMPANY

Docket Nos. 80629, 82112. Submitted November 14, 1985, at Detroit.
    Decided May 5, 1986.

Gary Kreski died as a result of injuries he sustained in the course
of employment as a firefighter when the roof and ceiling of a
building collapsed and fell on him. Plaintiff, Mary E. Kreski,
individually and as personal representative of the estate of
Gary Kreski, filed a wrongful death action in Wayne Circuit
Court against Edwin Weinstein and Modern Wholesale Electric
Supply Company, the owner and occupier of the building,
respectively. The circuit court, Paul S. Teranes, J., denied a
motion for summary judgment brought by defendants Wein-
stein and Modern, who then sought leave to appeal to the
Court of Appeals. The Court granted leave to appeal. Plaintiff
subsequently amended her complaint to name other defendants
including Detroit Edison Company. The circuit court denied a
similar motion for summary judgment brought by Detroit
Edison, which then sought leave to appeal to the Court of
Appeals. The Court granted leave and consolidated the defen-
dants' appeals. *Held:*

1. The circuit court properly denied summary judgment in
favor of defendants Weinstein and Modern on their claim that
the decedent was a mere licensee on their premises. The
decedent was summoned to fight a fire on the premises. He was
there at the invitation of these defendants to perform a func-
tion for their benefit. Therefore, the decedent was an invitee to
whom defendants Weinstein and Modern owed a duty to use
reasonable care and prudence to render the premises reason-
ably safe.

2. The Court of Appeals declined to adopt the fireman's rule
as urged by defendants. That rule would bar a firefighter who is

REFERENCES

Am Jur 2d, Negligence §§ 36 *et seq.*

Am Jur 2d, Premises Liability §§ 37 *et seq.,* 104.

Modern status of rules conditioning landowner's liability upon
    status of injured party as invitee, licensee, or trespasser. 32
    ALR3d 508.

See also the annotations in the ALR3d/4th Quick Index under
    Negligence; Premises Liability.

injured while fighting a fire from suing the person who negligently caused the fire on the basis that the risk of such injury is a part of his occupation. The idea that a firefighter should not be able to recover for certain injuries incurred during the course of his employment from a third-party tortfeasor because he has, in some sense, assumed the risk, has no place in the public policy of this state. The circuit court properly denied summary judgment in favor of defendants on the basis of the rule.

Affirmed.

1. NEGLIGENCE — LANDOWNERS — DUTY TO INJURED PERSON.
The duty owed by a landowner to a party injured on his land depends upon the status of the injured party at the time of the injury.

2. NEGLIGENCE — INVITEE — ECONOMIC BENEFIT — INVITATION.
An invitee is a person who is on the owner's premises for a purpose mutually beneficial to both parties; an individual is an invitee if his visit may reasonably be said to confer or anticipate a business, commercial, monetary or other tangible benefit to the occupant; the status of an invitee is tested not only by the theory of economic benefit but also by the concept of invitation.

3. NEGLIGENCE — OCCUPIERS OF LAND — DUTY — INVITEE.
An owner or occupier of land owes a duty to an invitee on his land to exercise ordinary care and prudence to render the premises reasonably safe.

4. NEGLIGENCE — LICENSEE.
A licensee is a person who desires to be on the premises of another because of some personal, unshared benefit and who is merely tolerated by the owner of the premises.

5. NEGLIGENCE — LANDOWNERS — LICENSEES — DUTY.
A possessor of land is liable for physical harm caused to a licensee by a condition of the property only if the possessor knew or had reason to know of the condition, realized that an unreasonable risk of harm to the licensee was involved, expected that the licensee would not discover the danger, and failed to exercise reasonable care to make the condition safe or to warn the licensee of the condition and risk involved, and the licensee did not know or have reason to know of the condition and risk involved.

6. NEGLIGENCE — INVITEE — FIREFIGHTERS.
An owner or occupier of land owes a duty to exercise ordinary

care and prudence to render the premises reasonably safe to a firefighter who comes to the premises to fight a fire; such a firefighter is an invitee and is on the premises for a purpose mutually beneficial to the owner or occupier and the firefighter.

7. NEGLIGENCE — FIREFIGHTERS.

A firefighter may recover for injuries sustained in the course of his employment in a suit against a third-party tortfeasor; a firefighter does not assume the risk of injury arising from the tortious conduct of such a tortfeasor.

*Sachs, Nunn, Kates, Kadushin, O'Hare, Helveston & Waldman, P.C.* (by *Barry P. Waldman* and *William E. Maxwell, Jr.),* for plaintiff.

*Mellon & McCarthy* (by *Daniel J. McCarthy* and *Steve J. Weiss),* for defendants-appellants Modern Wholesale Electric Supply Company and Weinstein.

*Walter S. Schwartz,* for defendant-appellant Detroit Edison Company.

Before: GRIBBS, P.J., and HOOD and A. T. DAVIS,* JJ.

GRIBBS, P.J. Plaintiff's decedent, Gary Kreski, was fatally injured in the course of his employment as a Livonia firefighter when the roof and ceiling of a building owned by defendant Edwin Weinstein and occupied by defendant Modern Wholesale Electric Supply Co., collapsed on him without warning. On April 25, 1983, plaintiff filed a wrongful death action against Weinstein and Modern in Wayne Circuit Court. Those defendants moved for summary judgment, but that motion was denied on June 4, 1984. Defendants sought leave to appeal to this Court in Case No. 80629, and on December 18, 1984, leave was granted.

* Circuit judge, sitting on the Court of Appeals by assignment.

On July 27, 1984, plaintiff filed a first amended complaint naming, among others, Detroit Edison Company as a defendant. Detroit Edison filed a motion for summary judgment, but on November 21, 1984, the trial judge denied that motion. Detroit Edison sought leave to appeal, and on January 24, 1985, this Court granted leave in Case No. 82112. The appeals have been consolidated.

Appellants contended that the "fireman's rule" should be applied to bar plaintiff's action. Defendants Weinstein and Modern also argued that they were not liable because plaintiff's decedent was a mere licensee. The trial court declined to adopt any version of the fireman's rule, and concluded that plaintiff's decedent was an invitee. We agree and affirm.

First, appellants Weinstein and Modern argue that the trial court erred when it ruled that they owed plaintiff's decedent the duty of care owed to an invitee. The duty owed by a landowner or occupier depends upon the status of the injured party at the time of the injury, *Doran v Combs,* 135 Mich App 492, 495; 354 NW2d 804 (1984); *Leep v McComber,* 118 Mich App 653, 657; 325 NW2d 531 (1982), lv den 417 Mich 1005 (1983). The injured party may be an invitee, a licensee, or a trespasser, *Preston v Sleziak,* 383 Mich 442; 175 NW2d 759 (1970). An invitee is one who is on the owner's premises for a purpose mutually beneficial to both parties, *Danaher v Partridge Creek Country Club,* 116 Mich App 305, 312; 323 NW2d 376 (1982); *Socha v Passino,* 105 Mich App 445, 447; 306 NW2d 316 (1981). An individual is an invitee if his or her visit may reasonably be said to confer or anticipate a business, commercial, monetary or other tangible benefit to the occupant, *Socha, supra,* pp 447-448; *Leveque v Leveque,* 41 Mich App 127, 130; 199 NW2d 675 (1972). In Michigan, the

status of an invitee is tested not only by the theory of economic benefit, but also upon the concept of invitation, *Preston, supra,* p 450; *Leveque, supra,* p 129. An owner or occupier of land owes a duty to an invitee on his or her land to exercise ordinary care and prudence to render the premises reasonably safe, *Danaher, supra,* p 312; *Preston, supra,* p 447.

A licensee is one who enters upon or uses another's premises with the express or implied permission of the owner or person in control thereof, *Leep, supra,* p 658. One who desires to be on the premises because of some personal, unshared benefit and who is merely tolerated on the premises by the owner is a licensee, *Socha, supra,* p 448; *Leep, supra,* p 663. A possessor of land is liable for physical harm caused to a licensee by a condition on the property only if the possessor knew or had reason to know of the condition, should have realized that an unreasonable risk of harm to the licensee was involved, should have expected that the licensee would not discover the danger, and failed to exercise reasonable care to make the condition safe or to warn the licensee of the condition and risk involved, and the licensee did not know or have reason to know of the condition or risk involved. *Preston, supra,* p 453.

Firefighters do not fit neatly into either category. See Prosser & Keeton, Torts, 5th ed, Ch 10, § 60-61, pp 412-432. No published Michigan case has spoken to the status of firefighters entering upon premises to fight a fire. However, a panel of this Court has held that a police officer is a licensee, *Reetz v Tipit, Inc,* 151 Mich App 150; — NW2d — (1986). We disagree with its conclusion. Generally, firemen are held to be licensees, Prosser, *supra,* pp 429-430; Anno: 11 ALR4th 597, 601; 2 Restatement Torts, 2d, § 345, comment c; pp 227-

228. However, some states consider them to be invitees, *Murphy v Ambassador East,* 54 Ill App 3d 980; 12 Ill Dec 501; 370 NE2d 124, 127 (1977); *Dini v Naiditch,* 20 Ill 2d 406; 170 NE2d 881, 885-886 (1960); *Strong v Seattle Stevedore Co,* 1 Wash App 898; 466 P2d 545, 548-549 (1970).

We conclude that, under Michigan law, firefighters are invitees. The Michigan cases distinguish between situations in which an injured person is on a defendant's premises for his or her own purposes and those in which his or her presence is mutually beneficial to both parties. A firefighter who comes on a defendant's premises to fight a fire is there for a purpose mutually beneficial to both parties. The occupier of the land is benefited by the firefighter's services when the fire is extinguished. Thus, the element of economic benefit is present. The landowner or occupier summons help, so the element of invitation is present. See *Preston, supra,* p 450. It cannot be said that the firefighter is a mere licensee, on the premises solely for his or her own benefit. The trial court's ruling that plaintiff's decedent was an invitee was correct, and will not be disturbed by this Court. Consequently, the duty owed by defendants Weinstein and/or Modern to plaintiff's decedent was to use reasonable care and prudence to render the premises reasonably safe.

Second, all the appellants argue that plaintiff's claims are barred by the "fireman's rule." Where there is no legal duty, there can be no actionable negligence, *Klimek v Drzewiecki,* 135 Mich App 115, 118; 352 NW2d 361 (1984). Appellants urge us to adopt a rule that no duty is owed to a firefighter in certain situations. The fireman's rule holds that because it is a firefighter's business to deal with the usual hazards involved in fighting fires, a firefighter cannot complain of negligence in the

creation of the very occasion for his engagement, *Berko v Freda,* 98 NJ 81; 459 A2d 663, 664 (1983). In other words, a firefighter who is injured while fighting a fire cannot sue a person who negligently caused that fire. See *Steelman v Lind,* 97 Nev 425; 635 P2d 666, 667-668 (1981). The rule is an exception to the general principle that one owes a duty of reasonable care. See *Walters v Sloan,* 20 Cal 3d 199; 142 Cal Rptr 152, 157; 571 P2d 609 (1977) (Tobriner, Acting Chief Justice, dissenting).

Regardless of the rationale invoked to support the rule, courts almost universally recognize that a fireman cannot recover when his or her complaint is based on the same conduct that initially created the need for the officer's presence in his or her official capacity, *Pottebaum v Hinds,* 347 NW2d 642, 645 (Iowa, 1984); Anno: 11 ALR4th 597, 601. The Iowa court noted that the modern trend is not away from the rule but toward it, *Pottebaum, supra,* p 644, but the State of Oregon recently abolished the rule, *Christensen v Murphy,* 296 Or 610; 678 P2d 1210 (1984). This Court has been asked to adopt that rule in Michigan. Apparently, the question is one of first impression in this state.

Defendants rely on a number of policy arguments which courts have relied upon to support the fireman's rule. They contend that one who has knowingly and voluntarily confronted a hazard should not be able to recover for injuries sustained thereby; that firefighters are provided with compensation for injuries, and a tort recovery would be duplicative; that it would be burdensome to charge all who carelessly cause or fail to prevent fires with the injuries suffered by the expert retained with public funds to deal with those inevitable, although negligently created occurrences; and

that individuals may be reluctant to summon fire-fighters, for fear of lawsuits.

The first argument is that a firefighter, in accepting the salary and fringe benefits offered for the job, assumes all normal risks inherent in the employment as a matter of law and thus may not recover from one who negligently creates such a risk. See *Steelman,* 97 Nev 427-428; *Armstrong v Mailand,* 284 NW2d 343, 350 (Minn, 1979).

Appellees argue that because the doctrine of assumption of risk has been abolished in this state, we cannot use this rationale as a basis for adoption of the fireman's rule. Courts have used assumption of the risk language in at least two different ways. Primary assumption of the risk is an absolute bar to a plaintiff's recovery, *Armstrong, supra,* p 348; *Felgner v Anderson,* 375 Mich 23, 54; 133 NW2d 136 (1965). Secondary assumption of the risk is a type of contributory negligence where the plaintiff voluntarily encounters a known and appreciated hazard created by the defendant without relieving the defendant of his duty of care with respect to such hazard, *Armstrong, supra,* p 349; *Christensen,* 296 Or 617-618. In *Felgner,* the Michigan Supreme Court quoted this passage from *McGrath v American Cyanamid Co,* 41 NJ 272, 274-276; 196 A2d 238 (1963):

> "In *Meistrich v Casino Arena Attractions, Inc,* (1959), 31 NJ 44 (155 A2d 90; 82 ALR2d 1208), we pointed out that assumption of the risk was theretofore used in two incongruous senses: in one sense it meant the defendant was not negligent, while in its other sense it meant the plaintiff was contributorily negligent. We said that in truth there are but two issues—negligence and contributory negligence—both to be resolved by the standard of the reasonably prudent man, and that it was errone-

ous to suggest to the jury that assumption of the risk was still another issue.

"It was our hope that after *Meistrich* the bench and bar would focus upon the true issues, but unhappily some cling to the terminology of assumption of risk and continue to be misled by it even while purporting to think of it as merely a convertible equivalent of negligence or contributory negligence.

\* \* \*

"In *Meistrich* we said the terminology of assumption of the risk should not be used when it is projected in its secondary sense, i.e., that of contributory negligence (31 NJ 55; 155 A2d 96; 82 ALR2d 1217). We thought, however, that 'perhaps a well-guarded charge or assumption of risk in its primary sense will aid comprehension' (31 NJ 54; 155 A2d 96; 82 ALR2d 1217). . . . Experience, however, indicates the term 'assumption of risk' is so apt to create mist that it is better banished from the scene. We hope we have heard the last of it. Henceforth, let us stay with 'negligence' and 'contributory negligence.' "

The Supreme Court then concluded:

Considering our conclusion that the doctrine of assumption of risk in this State properly is applicable only to cases in which an employment relationship exists between the parties, as well, perhaps, where there has been an express contractual assumption of risk, and considering the relative infrequency of such cases today, we need not go so far as did New Jersey's supreme court to eliminate the confusion and possible injustice resulting from the misuse of the assumption of risk doctrine and its language. Hereafter, when assumption of risk is used in cases between employee and employer for injuries incurred in the course of employment and where the statutory bar of the workmen's compensation act, *supra,* is not applicable and in cases where it is claimed there has been an express

contractual assumption of risk, it should be made clear to the jury, if there is one, that the doctrine serves only the purpose of limiting the scope of a defendant's liability for injuries caused to the plaintiff and has no utility in barring recovery where defendant has been found to have negligently breached a duty owed to plaintiff. *Assumption of risk should not again be used in this State as a substitute for, or as a supplement to, or as a corollary of, contributory negligence; nor should it be used to explain a law violator's enlarged duty of due care resulting from his violation of law.* The traditional concepts of contributory negligence are more than ample to present that affirmative defense to established negligent acts. See 2 Harper and James, The Law of Torts, § 21.1 et seq. (1956). Language other than that of assumption of risk easily can be found to describe the enlarged scope of the duty of due care imposed upon one who voluntarily violates statutory or common-law standards of due care. [375 Mich 55-56. Emphasis added.]

We conclude that the Supreme Court abolished the defense of assumption of risk in the secondary sense. However, abolition of the assumption of risk defense and use of that language in jury charges does not necessarily foreclose consideration of defendants' argument, based on primary assumption of risk, that as a matter of public policy some or all of defendants owed no duty to plaintiff's decedent. See *Armstrong, supra,* pp 348-349.

Recent decisions have tended to characterize the assumption of risk rationale as one of public policy generally. See *Walters,* 20 Cal 3d 204-205. The assumption of risk rationale is the major theoretical underpinning of the fireman's rule, *Christensen,* 296 Or 615-616. At first blush, the argument that it is a firefighter's job to put out fires, so no tort claim can be based on damage caused by that risk, seems to make sense. However, as pointed out

by Justice Tobriner in his persuasive dissent in *Walters,* 20 Cal 3d 212, that argument proves too much.

In Michigan most workers who are injured on the job, including firefighters, are covered by our Workers' Disability Compensation Act, MCL 418.101 *et seq.;* MSA 17.127(101) *et seq.* When an employee's injury is within the scope of the act, workers' compensation benefits are the exclusive remedy against the employer, MCL 418.131; MSA 17.237(131), *Jones v General Motors Corp,* 136 Mich App 251, 254; 355 NW2d 646 (1984). However, an employee can maintain an action for employment-related injuries against a tortfeasor who is not his or her employer or co-employee, MCL 418.827; MSA 17.237(827), *White v Chrysler Corp,* 421 Mich 192, 196; 364 NW2d 619 (1984). Thus, the mnaufacturer of a punch press may be liable to an employee who loses his hand while working on its machine even though that employee has, in a sense, assumed the risk of losing a hand by working on a punch press. See *White, supra,* pp 195-197. In our view, it would be unfair to preclude firefighters from recovering from third-party tortfeasors when other employees, even those engaged in dangerous occupations, can do so.

The argument that firefighters are specially compensated for the risks they take also fails in this state. Appellants note that firefighters receive the benefit of certain disability presumptions under the Workers' Disability Compensation Act, MCL 418.405(2); MSA 17.237(405)(2), and that they receive $500 extra burial expenses if they are killed while fighting a fire in another jurisdiction, MCL 419.203; MSA 4.584(3). Those provisions do not give firefighters significant protections that are not enjoyed by other employees, and they do not furnish this Court with a reason to prohibit tort

actions by firefighters against those who negligently cause fires.

We conclude that the idea that a firefighter should not be able to recover for certain injuries inflicted during the course of his or her employment by a third-party tortfeasor because he or she has, in some sense, assumed the risk, has no place in the public policy of this state. In fact, adoption of the fireman's rule would make firefighters second-class citizens with fewer rights than those enjoyed by other employees.

We also note that the risk-spreading policy does not support adoption of the fireman's rule. As Justice Tobriner noted in *Walters, supra:*

> In the first place, the suggestion that the retention of the fireman's rule spreads the risk of the fireman's injuries from the negligent tortfeasor to the taxpaying public cannot stand. In denying a fireman any recovery from a negligent tortfeasor, the fireman's rule does not simply require the fireman to recover his tort damages from the public at large, but instead totally precludes the fireman from recovering these damages at all. Although the fireman may, of course, recover worker's compensation benefits from the general public, all other injured workers are entitled to recover such compensation benefits and also to obtain their additional tort damages from third party tortfeasors. Thus, instead of spreading the risk of fireman's injuries, the fireman's rule in reality requires the injured fireman personally to shoulder a loss which other employees are not required to bear.
>
> Moreover, although some courts have been apprehensive that the abolition of the fireman's rule will necessarily place an unreasonable burden on a single negligent tortfeasor (see, e.g., *Krauth v Geller, supra,* 157 A2d 129, 131), these decisions appear to ignore the significant role that insurance presently plays in spreading the risk of loss among

policyholders. Many fires arise on business premises or as a result of commercial activities (see, e.g., *Giorgi v Pacific Gas & Elec Co, supra,* 266 Cal App 2d 355; *Scott v E L Yeager Constr Co, supra,* 12 Cal App 3d 1190 and such commercial ventures will normally carry liability insurance that would cover a fireman's tort action. In the case of such commercial enterprises I can perceive no justification for failing to treat the negligent injury of a fireman as much a "cost of doing business" as the negligent injury of any other person in the course of the commercial operation. In addition, comprehensive "homeowners" policies available to the average homeowner or renter commonly contain personal liability coverage that would shield a negligent individual from the full brunt of the fireman's claim. Accordingly, the "spreading the risk" desideratum does not justify the retention of the fireman's rule. [20 Cal 3d 216.]

See *Christensen,* 296 Or 620.

The argument that, without the fireman's rule, citizens will not summon firefighters has been called preposterous rubbish, Prosser & Keeton, Torts, 5th ed, Ch 10, § 61, p 431; *Christensen,* 296 Or 620. We agree with that assessment.

Michigan is one of the few states that has not adopted the fireman's rule. Defendants' arguments do not persuade us that adoption of that rule is desirable public policy. The trial court correctly refused to grant summary judgment to defendants on the basis of that rule.

Affirmed.